THE CITY OF TROY, Plaintiff, *v.* JAMES T. MURRAY and Others, Defendants.

Supreme Court, Rensselaer County, December 29, 1926.

**Municipal corporations — streets —action by city of Troy to restrain defendants from excavating on lands so as to interfere with lateral support of streets — municipality has right to prevent destruction or impairment of streets by removal of lateral support — city not estopped from interfering with removal of sand notwithstanding that it had knowledge bank was being worked — injunction granted.**

The city of Troy is entitled to an injunction restraining the defendants from excavating sand and gravel on lands adjacent to public streets in said city, where it appears that the removal of said sand and gravel has reduced the slope of the bank in such a manner as to imperil the streets.

A municipality has such an interest in its streets, whether it owns the fee or simply possesses an easement for highway purposes, that it may resort to the court to prevent a destruction or impairment of the highway by removal of the lateral support thereof.

The fact that, at the time said streets were laid out by the city, it was commonly known that the defendants were working the sand and gravel bank, does not estop the city from interfering with the removal of the sand and gravel from the bank up to defendants' property line, inasmuch as the removal thereof has now reached a point so that further excavation will result in the undermining of the streets.

While defendants may have had a license to remove the sand and gravel up to the property line, that license must have existed in parol and is not binding upon the city.

ACTION brought by the city of Troy against James T. Murray and others, for an injunction to restrain the defendants from excavating on lands near Grand View avenue in the city of Troy, in such a manner as to interfere with the lateral support of said street.

*Edward J. Donohue,* for the plaintiff.

*John F. Murray* and *W. H. Murray,* for the defendant James T. Murray.

RUSSELL, J. The property in question, including the lands upon which Grand View avenue is laid out, formerly belonged to common owners. In 1917 these owners entered into an agreement with the defendant James T. Murray whereby they agreed to sell to Murray the lands adjoining said street of which he is now the owner. In 1918 James T. Murray received a quitclaim deed of the property in question. This deed was in the ordinary form, and described property north of Hoosick street and west of Grand View avenue. There was nothing in this deed indicating the purpose for which the land was to be used.

In 1920 the city of Troy secured a conveyance of a strip of land for street purposes upon which land Grand View avenue and Valley View avenue are laid out as public streets. At the time Grand View avenue and Valley View avenue were established there was to the west of Grand View avenue a sand and gravel bank, the top of which was practically on a level with the grade of the street, and the bottom of which bank was at some points approximately eighty feet below the grade of the street.

The defendant Murray, at the time he obtained his deed, was engaged in the business of removing and selling sand and gravel from the sand and gravel bank west of Grand View avenue.

In 1922 a contour map of the sand and gravel bank in question and surrounding lands was made by the city. This map showed the relative location of the sand bank and Grand View avenue, Valley View avenue and other streets and lands in that vicinity. From this map, in connection with the testimony, it appears that from 1922 until the time of the commencement of this action, considerable quantities of sand and gravel were removed from the sand and gravel bank, and that the top of the bank has been approaching Grand View avenue along nearly the whole length of Grand View avenue. There has also been a reduction of the slope of the sand and gravel bank in places so as to imperil the street.

The city complains that the removal of sand and gravel from this bank, the reduction of the slope, and the approach of the top of the bank to Grand View avenue now endangers the street, and it seeks to enjoin any further threatened injury to the street, at least by reducing the slope where it might produce a slide.

It is settled that a municipality has such an interest in its streets or public highways, whether it owns the fee or simply an easement for highway purposes, to resort to the court to prevent a destruction or impairment of the highway by removal of its lateral support. It has also been held in *Village of Haverstraw* v. *Eckerson* (192 N. Y. 54) that " whether the acts of persons menace the condition of a highway in a direct manner, or indirectly, by so digging, or excavating, upon the adjacent lands as to affect the lateral support and to cause, or to threaten, the subsidence of the highway, the exercise of the equitable power of the court may, properly, be invoked by the municipality in restraint of their continuance."

The defendant contends, however, that when Grand View avenue and Valley View avenue were laid out, it was well known to the city that the defendant was working the sand and gravel bank, and that for this reason the city is estopped from interfering with the removal by the defendant of sand and gravel from the bank up to the defendant's property line. The defendant further claims

that the streets were improvidently established as public highways in view of their location so near the top of the sand and gravel bank and in a territory where it was practically useless as a public thoroughfare.

In so far as the location of the street is concerned, that was a matter resting in the judgment of the authorities. It may well be that it would be wise to close up and abandon this street for the reason that there is a danger in its use.

It was indicated in the testimony that at some points the slope of the bank is such that a slide is liable to occur as the angle of the slope from the western boundary of the street is less than the natural angle of repose of sand and gravel. That, however, is a matter for the municipal authorities to determine.

In any event, the defendant Murray has no right to further threaten the destruction of the streets in question, as the removal of sand and gravel has now reached the point that further excavation will result in the caving in of the streets at some points.

Under the circumstances I do not think the city is estopped from asserting its right to have the streets in question protected from caving in. While this may be a hardship to the defendant, in that he would be required to stop carrying on a lawful business, yet when he purchased his land he took it subject to the well-settled rules of law that he could not so use it as to cause adjoining properties to fall into the gravel pit by the removal of the lateral support of those properties. This case differs from *Ludlow* v. *Hudson River R. R. Co.* (4 Hun, 239) in that defendant's conveyance simply described a piece of land within certain boundaries, without any right, express or implied, to use the lands conveyed for the removal of material. The plaintiff when it obtained a deed of the property upon which the streets in question were laid out, had the right to assume that whatever business was being conducted on nearby properties, it would not be extended so as to destroy the highways the city might lay out upon its property. As between Murray and his grantor, Murray may have had a license to remove sand and gravel from his bank up to his line, but that license which must have existed in parol, is not binding upon the plaintiff, nor was there anything in the record title or the circumstances to put the plaintiff in a position where an estoppel can now be claimed as against it.

The only evidence in the case as to the requisite lateral support is that of the plaintiff's engineer who testified that a slope at the ratio of one and one-half to one foot would furnish sufficient support to the streets in question. There we have a definite measure of safety.

An injunction may, therefore, issue restraining the defendant

Murray from further removing sand or gravel from said sand and gravel bank so as to decrease the slope thereof from the ratio of one and one-half to one foot, taking the common boundary line of the highways and defendant's lands or the top of the slope.