**SAN JACINTO SAND COMPANY, Inc.,**
**Appellant,**

v.

**SOUTHWESTERN BELL TELEPHONE**
**COMPANY, Appellee.**

No. 81.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

March 6, 1968.

Rehearing Denied April 3, 1968.

Charles J. Sullivan, Houston, for appellant.

John L. Murchison, Jr., Donald L. Howell, Vinson, Elkins, Weems & Searls, James M. Shatto, James E. Barden, Houston, for appellee.

BARRON, Justice.

Appellee, Southwestern Bell Telephone Company (Southwestern Bell), as plaintiff, brought suit against defendant, San Jacinto Sand Company, Inc. (Sand Company) and others as defendants, seeking a temporary injunction to prohibit defendants from making excavations which allegedly would result in the destruction of the cables, conduits, and equipment of Southwestern Bell, and further seeking a declaration of its rights as an alleged easement owner to lateral and/or subjacent support. During the hearing on appellee's application for tempo-

rary injunction, on November 29, 1966, all parties jointly moved to consolidate for all purposes the hearing on application for temporary injunction and the hearing of the cause on the merits.

The hearing on the application for temporary injunction and on the declaratory judgment was tried without a jury, and at the conclusion of the testimony after some delay, on May 22, 1967, the trial court granted appellee's application for temporary injunction and held that Southwestern Bell, as owner of two easements burdening a tract of land owned by Sand Company, was entitled to the reasonable enjoyment and use of its easements, and was entitled to exercise the rights, privileges and authorities granted thereby without interference, damage or destruction by removal of the lateral and subjacent support of the easements through excavation of the sand, gravel and soil on the servient tract owned by the Sand Company.

This appeal has been perfected from the trial court's final judgment by San Jacinto Sand Company, Inc., as appellant. Southwestern Bell Telephone Company is appellee.

Appellant, Sand Company, is a Texas corporation doing business in Harris County and is engaged in the excavation and sale of sand and gravel. Appellee, Southwestern Bell, is a telephone company and public utility serving telephone customers in the Beaumont-Houston area and areas throughout and beyond the State of Texas. Appellant owns a certain 17.584 acre tract of land in Harris County, Texas, adjoining and east of the San Jacinto River, said property having been conveyed to appellant by deed from Sherwood E. Beverly, dated January 20, 1966, and duly recorded in the deed records of Harris County. In 1945 and 1954, two easements were executed by the then owners of the land to Southwestern Bell. Each easement specifically located the telephone lines across the property, the 1954 easement providing that the lines should extend approximately 10 feet

north of and parallel with the 1945 easement lines. The easements provided that Southwestern Bell was granted the "right, privilege and authority to construct, reconstruct, operate, maintain, *or remove* lines of telephone and telegraph, or other signal or communication circuits, consisting of underground conduits, cables, manholes, markers and fixtures *as the grantee may from time to time require*, (with the right to cut down and keep cut down trees, brush, and stumps within ten feet of each side of said lines), on and under the property * * *.", and that the conduits and cables were required to be buried to such depth as not to interfere with the ordinary cultivation of the land. Pursuant to the easement granted in 1945, Southwestern Bell installed in 1945 and 1946, certain equipment including underground inter-city toll cables referred to as the Houston-Beaumont A and B cables. Pursuant to the 1954 easement, appellee installed in 1954, underground inter-city toll cables, referred to as the Crosby-Houston cables. The lines extend from the east bank of the San Jacinto River in an easterly direction and then generally in a north-northeasterly direction to the north property line of the 17.584 acre tract. The easements were referred to during trial as a 30-foot easement or easements to describe the 30-foot wide area used by appellee in the repair, operation, maintenance, etc., of its equipment, though by stipulation, reference to the 30-foot area was used by the parties as an identification device. The cables have not been replaced since they were originally installed except at the river crossing. Appellant, Sand Company, also owns a tract of land of about 20.099 acres located immediately adjacent to and south of the 17.-584 tract and has extensively excavated sand and gravel from the surface of the 20.099 acre tract. Waters of the San Jacinto River have filled the excavations on that tract. Appellant and others were excavating and removing sand and gravel from the 20.099 acre tract for some time prior to the filing of this action.

The title of Sand Company to the 17.584 acre tract and the title to the two easements of Southwestern Bell derive from a common grantor, and appellant's chain of title clearly reflects the existence of appellee's easements, which were duly recorded. Sand Company acquired title to the 17.584 acre tract with actual knowledge that the tract was burdened with the two easements, and with actual knowledge that appellee had installed its cables and conduits pursuant to such easements.

The trial court found that the operation and maintenance of the conduits, cables, etc., have reasonably required the use of a ten-foot area on each side of each of the cables. Since the second easement is located ten feet north of the first easement, there is an overlap in the area used, and Southwestern Bell has utilized a strip approximately thirty feet in width for the entire length of the easements. In 1966, appellee began construction of a new river crossing under the San Jacinto River. The Houston-Beaumont A and B cables and the Crosby-Houston cable were connected to the new river crossing at a distance of approximately 192–197 feet east of the east bank of the San Jacinto River on the 17.584 acre tract. The new crossing consists of a 12-inch concrete coated pipe, which enters the east bank of the San Jacinto River at a point located between the two 8-inch steel pipes in which the Houston-Beaumont A and B cables and the Crosby-Houston cable had been installed. The 12-inch pipe terminates at a manhole at the 192–197 foot point on appellant's land, where the existing 27 quad, 19 gauge Houston-Beaumont A and B cables and the Crosby-Houston 51 pair, 19 gauge cable were brought into the manhole on the 17.584 acre tract and spliced into the three 37 quad, 19 gauge cables. The two 8-inch pipes from that point westward to the river were thereby rendered useless. The cables constitute an integral part of the communication system between Houston and the area of Beaumont, Port Arthur and Orange. In addition, the cables involve high priority government circuits, press circuits, radio broadcast circuits, high-flying dispatch circuits, aviation control circuits and foreign exchange circuits.

The composition of the surface of the 17.584 acre tract is largely common sand and gravel. Certain areas of the tract contain deposits of sand and gravel at least to the extent of 15 to 30 feet below the surface, and appellant claims that there are deposits of sand in commercially marketable quantities extending to a depth of about 60 feet. Beginning about November, 1966, appellant prepared the surface of the 17.584 acre tract for excavation. Soon thereafter, the Sand Company began dragline excavations to the north and to the south of appellee's easements and the cables and conduits placed pursuant to the easements. Excavation of the 17.584 acre tract was discontinued as the result of a temporary restraining order obtained by appellee. Appellant stipulated that it did not intend directly to extract any sand from beneath the easements of appellee, and accordingly it stated that excavation operations would not be conducted within the 30-foot strip extending from the east bank of the San Jacinto River in a generally eastern direction for approximately 1,747 feet and then in a generally northeastern direction to the northern boundary of the tract.

In the course of the trial, hydraulic, soil and structural engineers testified, and the trial court found, that prosecution of appellant's plan of development would destroy the lateral and subjacent support of appellee's easements and the destruction of the cables, conduits, manholes, etc., placed pursuant thereto. The natural ground surface of the 17.584 acre tract is about 15 to 18 feet above the surface level of the water flowing in the San Jacinto River. The trial court further found that if excavations proceeded on either side of the 30-foot easement strip, the strip would deteriorate, and that if there were dredging operations to a depth of 60 feet on either side of the easement, the surface land

would disappear, and deterioration would begin long before a 60-foot depth is reached. The trial court found from the evidence that alternatives would be impracticable, such as rerouting of appellee's lines, installation of aerial crossings, use of steel sheet piling bulkheads on either side of the easements, etc., and though technologically possible, such alternatives would be prohibitive and not feasible because of cost, maintenance, and loss of time.

In order to provide lateral and subjacent support for Southwestern Bell's easements, the trial court decreed that the entire natural east bank of the San Jacinto River, along the west boundary of the 17.584 acre may not be further disturbed, and that no excavation may be made east of the east bank of the river for a distance of 200 feet; that no excavation may be made on land which forms the easements, the 30-foot strip. South of the easements at a point 200 feet east of the river and extending east 500 feet from that point, a stable residual slope of 3 horizontal to 1 vertical measured from natural ground level at the south easement line to mean sea level (river surface) and a residual slope of 10 horizontal to 1 vertical from mean sea level to the depth of the excavation below mean sea level was allowed. Parallel to the east river bank 200 feet back, 3 to 1 slope to mean sea level and a slope of 5 to 1 from mean sea level to depth of the excavation below mean sea level was ordered. For the remainder of the tract a 3 to 1 slope was permitted. North of the easement line a 3 to 1 slope was ordered 200 feet east of the river extending easterly throughout the tract and 200 feet from the river. The trial court further ordered that supplemental equitable relief may be provided by the court from time to time on application of any party.

■ Appellant attacks the judgment of the trial court by twenty-one points of error. By points five, six and seven, appellant contends that appellee is trespassing upon the 17.584 acre tract from a point approximately 197 feet back westerly to the San Jacinto River, and that appellee has abandoned the two 8-inch lines for that distance and has replaced the old lines with the new 12-inch pipe up·to the manhole constructed in 1966, which lies between the two 8-inch pipes above referred to. While appellee, Southwestern Bell, did relocate and remove its line by placing a 12-inch pipe between the two 8-inch pipes for a distance of 197 feet, no greater burden on the servient estate was imposed by such change. Cantu v. Central Power & Light Co., 38 S.W.2d 876 (Tex.Civ.App.), writ ref. The original 8-inch lines were parallel lines approximately eight to ten feet apart, and the discontinuance of use of the old lines by replacement with the 12-inch line lessened the burden upon the servient estate owned by appellant. Fort Quitman Land Co. v. Mier, 211 S.W.2d 340, 343 (Tex.Civ.App.), writ ref., n. r. e.; 2 Thompson on Real Property (Replacement Ed., 1961), Sec. 426, p. 694; 21 Tex.Jur.2d 175; 28 C.J.S. Easements § 95, p. 777; Shammel v. Vogl, 144 Mont. 354, 396 P.2d 103; Burris v. Peoples Ditch Co., 104 Cal. 248, 37 P. 922.

■ Appellant claims that the 1966 installation amounted to an expansion of Southwestern Bell's easement rights. The existence of an unauthorized expansion of easements turns on a proper construction of the written agreement of the parties. See Houston Pipe Line Co. v. Dwyer, 374 S.W.2d 662, 664 (Tex.Sup.). As stated above, each of appellee's easements provides, in part, that the easement carries with it the, ·

"right, privilege and authority to construct, reconstruct, operate, maintain, repair, or *remove* * * * conduits, cables, manholes, markers and fixtures *as the grantee may from time to time require.*" (Emphasis added.)

The principal decisions relied upon by appellant are the Dwyer case, supra, and Winslow v. City of Vallejo, 148 Cal. 723,

84 P. 191, 5 L.R.A.,N.S., 851 (1906), the latter case being cited as authority in the Dwyer opinion. In Dwyer, plaintiff sought a judgment declaring that a pipeline easement terminated as a result of defendant having removed an 18-inch low pressure pipeline and replacing it with a 30-inch high pressure pipeline. Defendant answered that its easement right had not terminated and in the alternative, sought to condemn a right-of-way and easement. The agreement creating the easement contained no specification as to the size of the pipeline. It provided that the pipeline company had "A right of way to lay, maintain, operate, repair, *and remove* a Pipe Line for transportation of gas." The parties struck out the word "remove" and also deleted a paragraph that gave the pipeline company the right to construct additional pipelines. Additionally, they provided that the pipeline company would have the authority to remove the pipeline on termination of the easement. Stating that a proper determination of the case turns on a construction of the agreement between the parties, the Texas Supreme Court held:

(1) "(T)hat the terms 'operate' and 'maintain' in the granting clause are at least broad enough to include the right to remove and replace the original pipe with pipe of the same size when necessary."

(2) That unlike the situation that existed in Knox v. Pioneer Nat'l Gas Co., 321 S.W.2d 596 (Tex.Civ.App.1959, writ ref., n. r. e.), there was no language in the agreement between the parties which could be construed to permit a grantee a right under the agreement in excess of the right actually used, i. e., a right to increase the size of the pipe in excess of 18 inches in diameter.

(3) Emphasizing the fact that the parties had deleted the word "remove", the Court held that in installing the 18-inch pipe with the consent and acquiescence of the plaintiff, the extent of defendant's easement rights under their agreement became fixed and certain "Defendant was not authorized to remove this 18-inch line initially constructed and replace it with a line of substantially greater size."

In Winslow v. City of Vallejo, supra, an easement granting the City of Vallejo a right of way for "any water pipes or mains which may be laid by the city.", such pipes to be covered by not less than 1½ feet of ground, and to be "laid and maintained on present surveyed line as near as may be." was involved. The Supreme Court of California held in favor of the grantor-landowner and said that where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right with the acquiescence and consent of both parties in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed. The City of Vallejo had sought to lay an additional 14-inch pipe about three feet from the 10-inch pipe originally installed. The court held that the most that could be said regarding the language of the easement was that the grant was indefinite as to the number of pipes, and that the city, having originally elected to lay one pipe, was bound by such election.

The language of the present agreement between the parties clearly demonstrates the propriety of appellee's action in substituting the single 12-inch pipe for the two 8-inch pipes. Particular attention is directed to the fact that the easements expressly provide appellee with the right to *reconstruct or remove conduits, cables and fixtures as the grantee may from time to time require*. The plural is used throughout. We believe a proper construction of the easements involved in this case warrants the placement of the 12-inch pipe between the two 8-inch pipes with a resultant replacement and non-use of the two 8-inch pipes. The inclusion of the above language demonstrates that the parties intended that Southwestern Bell be permitted to remove or expand its use of the ease-

ments as appellee might from time to time require, at least to place the 12-inch pipe between and in lieu of the old pipes within the 30-foot area. Knox v. Pioneer Natural Gas Co., 321 S.W.2d 596 (Tex.Civ.App.), writ ref., n. r. e.; Cantu v. Central Power & Light Co., supra.

■ Moreover, appellant's above claims do not affect appellee's alleged right of lateral support of its easements. Until appellant advanced its abandonment theory, over five months after the trial of the case, it argued that appellee had valid prescriptive easements. Even if it be held that appellee trespassed to some extent or had improperly expanded its easements, its right to lateral and subjacent support would not be affected. Such alleged enlargement and trespass could not affect the quantity of sand and gravel that the Sand Company could excavate from the property. It is important to note that in the Dwyer case, while the Supreme Court held that the easement owner had expanded its easement rights and that the landowner would thus have condemnation rights, the Supreme Court expressly held that the easement owner's expansion did not constitute a termination of its easement rights.

■ Appellant contends that appellee abandoned the easements from the river to a point 197 feet into the 17.584 acre tract where the new manhole was placed in 1966, and cites the testimony of Mr. Jaenacke, appellee's Toll Engineer, to the effect that when the new line was placed, the old pipe was abandoned in place in support of its contention. The Toll Engineer obviously meant only that the old pipes, which had been laid pursuant to the easements and which were replaced by a new pipe, were left in the ground because there was no point in taking them out. This does not mean that the easements were abandoned, especially when a new line had been laid between the old pipes at the same time. It is necessary to prove an intent to abandon in order

for there to be an abandonment of an easement, and the intention must be satisfied by clear and satisfactory evidence. Dallas County v. Miller, 140 Tex. 242, 166 S.W.2d 922 (Tex.Com.App.), opinion adopted; 1 Tex.Jur.2d, Sec. 10, p. 8. Although in the present case there was clearly not a non-use of the easement, the decisions uniformly hold that mere non-user does not in itself constitute abandonment. Dallas County v. Miller, supra. The use for which appellee acquired its easements has not failed. See Griffith v. Allison, 128 Tex. 86, 96 S.W.2d 74, 77 (Tex.Com.App.), opinion adopted. There was no pleading of abandonment, which is an affirmative defense, and failure to plead it results in its waiver. Rule 94, Texas Rules of Civil Procedure; See Chapman v. Tyler Bank & Trust Co., 396 S.W.2d 143 (Tex.Civ.App.), writ ref., n. r. e. We hold that the issue of abandonment was not tried by express or implied consent, and that the findings and implied findings of the trial court that there was no abandonment are supported by the evidence.

By various points of error, appellant contends that appellee, while it is entitled to such rights as may be necessary and essential to reasonable enjoyment of the easements, is nevertheless not entitled to lateral and subjacent support for the easements in question, and that appellant may with impunity excavate sand and gravel from its 17.584 tract as it sees fit. Appellant stipulated that it would not, however, extract sand from beneath the easements or within the 30-foot area where the lines are located. But the evidence clearly shows that such restriction agreed to will not solve the problem, and that within a short time, if appellant pursues its plan of excavations, all lateral and subjacent support of the lines, manhole and other equipment will be lost.

■ The grantee of an easement is entitled to such rights as are incident, essential or necessary to the enjoyment of

such easement. Williams v. Thompson, 152 Tex. 270, 256 S.W.2d 399. An easement, however, gives no exclusive dominant right over the servient land unnecessary to the enjoyment of such easement, and the dominant owner (easement owner) must make a reasonable use of the right so as not unreasonably to interfere with the property rights of the owner of the servient estate. Magnolia Pipeline Co. v. McCarter, 52 S.W.2d 663 (Tex.Civ. App.), no writ hist.; Texas-Louisiana Power Co. v. Webster, 59 S.W.2d 902, 905 (Tex.Civ.App.), affirmed, 127 Tex. 126, 91 S.W.2d 302. As was held in Simon v. Nance, 45 Tex.Civ.App. 480, 100 S.W. 1038, no writ, the existence of the right to lateral support is an absolute right and is not subordinate to any right of the *adjoining* proprietor. Appellant, however, contends that rights of an *adjoining* proprietor differ from the rights of an easement owner as against the landowner, or the rights of the owner of the dominant estate as against those of the owner of the servient estate. We hold that the duties and obligations as between the owners of the dominant estate and the servient estate, if different, are greater and more clearly defined than the rights as between adjoining landowners, by reason of the contractual relationship of the parties under the authority and the rules of law cited above. In contrast, in the present case, there is a special relationship between appellant and appellee and the interests of land involved. The prior owners of the 17.584 acre tract encumbered, for valuable consideration, the tract of land for the benefit of appellee. The owners of the servient estate sold and guaranteed the right to use the easement for the purposes stated. Appellant is in privity with its predecessors in title, and took with actual and constructive notice of Southwestern Bell's easements. Accordingly, there is even more reason to conclude that an easement is entitled to lateral support.

Whether we say that necessary lateral and subjacent support of the easements here involved is an incident of appellee's right to the complete enjoyment of the easements, or whether lateral and subjacent support is a separate right of property makes little practical difference. All of the testimony in this case points clearly to the fact that some formula or some means was necessary to regulate the excavations and removal of sand and gravel, or appellee's telephone lines and equipment would have no support. They would, in fact, have been left suspended in the air. The State of Texas is blanketed with many thousands of easements. Although most of these are privately owned, practically all serve public purposes. The tremendous transportation and communication systems servicing the state are dependent upon the integrity of these easements. Many of the streets, roads, and highways of the state are built on easements. The distribution of electric power is dependent upon easements as is practically all telephone service. Pipelines and railroads generally rely entirely on easements. Under the view taken by appellant, these interests in land would be potentially reduced to mere licenses at will.

The problems in this case are difficult, for to grant adequate relief to appellee the appellant must suffer loss and damage, and its right to excavate valuable sand and gravel from its land must be reduced. But to our minds the equities and legal rights of the parties are clear. We hold that the owner of the dominant estate, the easement owner, is entitled to lateral and subjacent support for its easements, its lines and its property lawfully thereon, and that the trial court correctly applied the doctrine of lateral and subjacent support. Salt Lake City v. J. B. & R. E. Walker, Inc., 123 Utah 1, 253 P.2d 365; Village of Haverstraw v. Eckerson, 106 N.Y.S. 506, aff'd, 84 N.E. 578, 20 L.R. A.,N.S., 287; City of Troy v. Murray, 128

Misc. 419, 219 N.Y.S. 681; Cincinnati & Suburban Bell Telephone Co. v. Eadler, 75 Ohio App. 258, 61 N.E.2d 795; City of Scranton v. Peoples Coal Co., 256 Pa. 332, 100 A. 818; East Ohio Gas Co. v. James Bros. Coal Co., Ohio Com.Pl., 85 N.E.2d 816; Sumrall v. United Gas Pipe Line Co., 232 Miss. 141, 97 So.2d 914. The Texas courts have impliedly recognized that easements are entitled to lateral support. In Calvert v. Harris County, 46 S.W.2d 375 (Tex.Civ.App.), writ ref., a condemnation suit, the condemnees attempted to recover as a part of their damages the loss of mineral rights relating to the minerals underlying the surface of the land taken for road purposes. The court rejected condemnee's contention. In the first place, the condemnor did not acquire the minerals. "The settled rule is that in condemnation proceedings only an easement is acquired." Secondly, the oil and gas in question could be extracted by drilling upon the condemnees' land lying adjacent to the easement which was taken. The court said:

"In Lewis, Eminent Domain, Vol. 2 (3rd Ed.) page 1268, we find this statement: 'When an easement is taken for a Railroad or other public use, the owner of the fee retains title to the minerals with the right to remove them, *subject to the right of support* for the railroad or whatever may be put upon the land, and to the right of exclusive use of the surface.' See Southern Pac. R. Co. v. San Francisco Savings Union, 146 Cal. 290, 79 P. 961, 964, 70 L.R.A. 221 * * *." (Emphasis added)

Appellant, in an attempt to equate its rights with the rights of a mineral or oil and gas lessee, contends that its excavations and removal of sand and gravel from its land places it in the position of a mineral lessee or owner, and cites the case of Warran Petroleum Corp. v. Monzingo, 157 Tex. 479, 304 S.W.2d 362, 65 A.L.R.2d 1352 in support thereof. Appellant contends that its right to remove "minerals" was absolute, and consequently there is no duty befalling appellant to provide lateral support. The position is untenable. The leading Texas decision bearing on the meaning of the term "minerals" as it is used in the Texas law concerning mines and minerals is Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994 (Tex.Sup.). Sand and gravel under the circumstances of this case are not minerals. Psencik v. Wessels, 205 S.W.2d 658 (Tex.Civ.App.), writ ref.; Winsett v. Watson, 206 S.W.2d 656 (Tex. Civ.App.), writ ref.; See 40 Tex.L.Rev. 163. Compare Street v. Sinclair Pipeline Co., 386 S.W.2d 350 (Tex.Civ.App.), no writ hist., with Kenny v. Texas Gulf Sulphur Co., 351 S.W.2d 612 (Tex.Civ.App.), writ ref., both decisions by the same court. The case of Cline v. Henry, 239 S.W.2d 205 (Tex.Civ.App.), writ ref., n. r. e., cited by appellant, involving a waiver of homestead rights, is unpersuasive and is not in point.

None of appellant's due process or other constitutional rights have been violated in this case. The trial court's holding that removal or change in the type and nature of the easement rights of appellee is not feasible under the circumstances is fully supported by the evidence. Moreover, the trial court's methods of providing for lateral and subjacent support for appellee's easements outlined above is supported by the evidence, and the trial court's remedy was the only solution developed by the testimony. Appellant's defense was principally that no lateral support was required. Under the difficult and complex circumstances, the trial court's remedy was reasonable and necessary to protect appellee's easement rights. The trial court provided for supplemental relief on application of the parties to relieve inequities and hardships which might develop in the future, and we believe the judgment is in all things correct.

We have carefully reviewed each contention made by appellant, and finding no error in the trial court's judgment, it is affirmed.