Opinion filed January 30, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed January 30, 2009

 

 

 

 

                                                                        In The

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00264-CV 

                                                    __________

 

                MELVIN
J. SCOTT AND JOYCE M. SCOTT, Appellants

                                                             V.

            
CAROL SPALDING AND EARNEST SPALDING, Appellees

 



 

                                         On
Appeal from the 259th District Court

                                                        
Jones County, Texas

                                                 
Trial Court Cause No. 20,544

 



 

                                             M
E M O R A N D U M   O P I N I O N

 

We
are called upon to address seven issues on appeal in this contract for deed
lawsuit.  We reverse and remand that portion of the judgment awarding attorney=s fees.  Otherwise, we
modify the amount of damages and affirm the judgment of the trial court.

Melvin
J. Scott and Joyce M. Scott owned a building in Hamlin.  They entered into a
contract to sell the property to Carol Spalding and Earnest Spalding for
$10,000.  The purchase price was to be paid at the rate of $250 per month.  The
Scotts agreed to deliver a warranty deed to the Spaldings when the $10,000
purchase price had been paid.








Before
the sale of the property to the Spaldings, Jones County had been renting a
space in the building for $300 a month.  After the sale of the property to the
Spaldings, the Scotts continued to receive the rent checks from the county but
would give the checks to the Spaldings each month.  The Spaldings would then
write the Scotts a check for the $250 payment called for under the contract. 
It is largely undisputed that the Spaldings paid the Scotts fifty-one payments
of $250 each plus an additional $200 in two other checks, for a total of
$12,950 on the $10,000 contract.

At
some point in time before the contract price had been paid, the Spaldings had
not paid some of the ad valorem taxes due on the property.  The Scotts decided
to withhold the Jones County rent for six months and use that $1,800 to pay
those delinquent taxes.

The
Spaldings operated a business in the building that they purchased from the
Scotts.  The business eventually closed.  According to Mrs. Spalding, not long
before the business closed, she  told Mrs. Scott that she wanted to settle up
and Aget the papers on
[the building].@  Mrs.
Scott said that she would talk to Mr. Scott and get back to her.  Subsequently,
and while the Spaldings still had personal property in the building, Mr. Scott
went to the Spalding=s
home.  Mrs. Spalding testified that she told Mr. Scott that she wanted to
settle up and asked him, A[H]ow
much more do we have to pay, or how much have we paid you?@  Mr. Scott said that he
did not know but that he would get back to her.  Mrs. Spalding=s testimony was that, at that
time, Mr. Scott told her that he had Ano
intentions of giving [them] a deed to this place.@ 
Mr. Scott said that he made no such statement Athat
[he knew] of.@

On
a later occasion, Mr. Scott went back to the Spalding=s home.  Mr. Scott testified that it was at
this time that Mrs. Spalding surrendered the keys to the property to him.  Mrs.
Spalding, however, testified that she did not surrender the keys to him but
that she gave Mr. Scott a new key to the back door of the building because the
old lock had been replaced after it had been damaged.  Mr. Scott already had keys
to the rest of the building because he and Mrs. Scott still had some property
stored there.








The
Spaldings wrote their last check to the Scotts in February 2003.  Later, Mr.
Scott discovered that the Spaldings had not paid several years of ad valorem
taxes on the property, and he paid them.  In their briefs, the parties seem to
agree that the amount of the taxes paid was $2,562.33.  

The
Spaldings submitted exhibits showing that they had written checks to the Scotts
in the total amount of $12,950.  Additionally, as we have noted, the Scotts
redirected $1,800 due to the Spaldings and paid it over to taxing authorities. 
Even though the Spaldings had paid $14,750, $4,750 more than was due on the
contract, the Scotts did not deliver a deed to them but, rather, sold the
property to a third party.

After
the Scotts resold the property, the Spaldings sued them claiming that the
Scotts committed various deceptive trade practices, common-law fraud, fraud in
a real estate transaction, and breach of contract.

After
a bench trial, the trial court awarded the Spaldings actual damages of
$14,250.  Because the trial court found that the Scotts= actions were committed knowingly, it also
awarded the Spaldings additional damages of $8,000.  Finally, the court awarded
the Spaldings $8,000 in attorney=s
fees.

Seven
issues are brought to us by the Scotts.  They are the following:  (1) there is
either no evidence or insufficient evidence to support the trial court=s findings regarding
deceptive trade practices; (2) the finding that the Spaldings did not abandon
the property is against the great weight and preponderance of the evidence; (3)
the Spaldings are not entitled to additional damages because the record does
not show that the Scotts acted knowingly; (4) the evidence does not support the
finding that the Scotts=
actions were the producing cause of the Spaldings=
damages; (5) there is a variance  between the conclusions of law and the
judgment; (6) the trial court should have considered evidence of offsets and
credits in favor of the Scotts; and (7) the trial court should not have taken
judicial notice of the amount of attorney=s
fees awarded to the Spaldings.

Because
findings of fact in a bench trial have the same force and dignity as a jury
verdict, we review them for legal and factual sufficiency of the evidence under
the same standards we apply in reviewing a jury=s
findings.  Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  When
reviewing the legal sufficiency of the evidence, we consider the evidence in
the light most favorable to the challenged finding and indulge every reasonable
inference that would support it.  City of Keller v. Wilson, 168
S.W.3d 802, 823 (Tex. 2005).  We must credit favorable evidence if a reasonable
factfinder could and disregard contrary evidence unless a reasonable factfinder
could not.  Id. at 827.  We must determine whether the evidence at trial
would enable reasonable and fair‑minded people to find the facts at
issue.  Id.  The factfinder is the only judge of witness credibility and
the weight to give to testimony.  Id. at 819.








When
reviewing a challenge to the factual sufficiency of the evidence, we examine
the entire record, considering both the evidence in favor of and contrary to
the challenged finding.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
After considering and weighing all the evidence, we set aside the fact finding
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986).  As in a legal sufficiency review, the trier of fact is the sole
judge of the credibility of the witnesses and the weight to be given to their
testimony. GTE Mobilnet of S. Tex. Ltd. P=ship v. Pascouet, 61 S.W.3d 599, 615‑16
(Tex. App.CHouston
[14th Dist.] 2001, pet. denied).  We may not substitute our own judgment for
that of the trier of fact, even if we would reach a different answer on the
evidence.  Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex.
1998).  The amount of evidence necessary to affirm a judgment is far less than
that necessary to reverse a judgment.  Pascouet, 61 S.W.3d at 616.

The
Scotts= complaints are
directed specifically at Findings of Fact Nos. 7 through 13, 17, and 20 through
22.

In
its Finding of Fact No. 7, the trial court found that the Scotts had
represented to the Spaldings that they would provide a warranty deed after the
principal was paid and that the representation was not true.  In Finding of
Fact No. 8, the trial court found that the contract had uses or benefits that
it did not have.  And, in Finding of Fact No. 9, the trial court found that the
contract conferred rights and obligations that it did not have.








The
contract between the parties provided that, when the sum of $10,000 had been
paid to the Scotts, they would issue a deed to the Spaldings.  Therefore, the
trial court did not err when it found in its seventh finding of fact that the
Scotts had represented to the Spaldings that they would furnish a warranty deed
to them when the purchase price was paid.  The trial court had testimony before
it that the Scotts never offered to deliver a deed to the Spaldings, even
though more than the contractual purchase price had been paid.  The trial court
also had testimony before it from both of the Spaldings that Mr. Scott said
that he never intended to give them a warranty deed.  Mr. Scott=s testimony was that he did
not say that, Athat
[he knew] of.@ 
Furthermore, the Scotts sold the property to someone else even though the
Spaldings had paid more than the entire purchase price.  As the only trier of
fact, the trial court was free to believe or disbelieve the witnesses.  The
evidence is both legally and factually sufficient to support the seventh
finding of fact that the Scotts represented they would deliver a warranty deed
to the Spaldings when the purchase price was paid and that the representation
was untrue.  Because we have found legal and factual support in the evidence
for the trial court=s
seventh finding, we need not address Findings of Fact Nos. 8 and 9.  The Scotts= first issue on appeal is
overruled.

We
must now decide whether the misrepresentations that the trial court found in
its seventh finding were a producing cause of injury to the Spaldings, as the
trial court found in its tenth finding of fact.  In the Scotts= brief, they give this
definition of producing cause:  AProducing
cause is a substantial factor that brought about the injury and without which
the injury would not have occurred.@ 
Citing Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd., 896 S.W.2d
156, 161 (Tex. 1995).  Under this issue, the Scotts seem to argue that, since
the payments that the Spaldings made to the Scotts were paid out of the Jones
County rent checks, the Spaldings were not actually out any money.  Because the
Jones County rent money was the Spaldings=
money, the argument is based upon a false premise.  See Graves v. Diehl,
958 S.W.2d 468, 472 (Tex. App.CHouston
[14th Dist.] 1997, no writ).  If the Spaldings had been told before they
entered the contract for deed that they were not going to get a deed, there can
be little doubt that they would have declined to enter this transaction and pay
the purchase price, and the injury would not have occurred.  The fourth issue
on appeal is overruled. 

In
issue two, the Scotts claim that the trial court=s
finding that the Spaldings did not abandon the property was against the great
weight and preponderance of the evidence.  They inform us of the standard of
review but cite us to no authority on the issue of abandonment.  The complaint
is waived.  Tex. R. App. P. 38.1(h). 
Even if the point were not waived, the trial court heard the contradicting
testimony regarding the keys to the property and other testimony regarding
abandonment.  As the trier of fact, the trial court was the judge of the
credibility of the witnesses and the weight to be given to their testimony. 
The Scotts had the burden of proof on the issue of abandonment.  Abandonment is
an affirmative defense.  Tex. R. Civ. P.
94; San Jacinto Sand Co. v. Sw. Bell Tel. Co., 426 S.W.2d 338, 344 (Tex.
Civ. App.CHouston
[14th Dist.] 1968, writ ref=d
n.r.e.).  The trial court failed to find abandonment.  The Scotts= complaint in this issue is
framed as a factual sufficiency complaint.  When a party attacks the factual
sufficiency of an issue upon which it had the burden of proof, it must
demonstrate that the adverse finding is against the great weight and
preponderance of the evidence.  Marrs & Smith P=ship v. D.K. Boyd Oil &
Gas Co., 223 S.W.3d 1,14 (Tex. App.CEl
Paso 2005, pet. denied).  The evidence that we have outlined above shows that
the Scotts have not met this burden.  The second issue on appeal is overruled.








In
issue three, the Scotts argue that the Spaldings were not entitled to
additional damages under Tex. Bus. &
Com. Code Ann. '
17.50(b)(1) (Vernon Supp. 2008).  Specifically, the argument is that the record
does not support a finding that the Scotts acted knowingly.  As in the second
issue, except to state the law generally, the argument here is not supported by
citations to authority, and we find no record references regarding the
evidence.  The issue is waived.  Rule 38.1(h).  Even if the issue is not
waived, the Scotts cannot prevail.  Again, the trial court had before it
testimony that Mr. Scott told the Spaldings on at least one occasion that he
never intended to furnish a deed.  This testimony, which the trial court as the
trier of fact was entitled to believe, together with the undisputed facts that
no deed was ever tendered even though the property was paid for and that the
property was sold to another after the Spaldings had paid for it, supports the
trial court=s finding
that the Scotts acted knowingly.  We overrule issue three.

In
their fifth issue on appeal, the Scotts assert that there is a conflict between
the ninth conclusion of law and the judgment.  In the judgment, the trial court
awarded the Spaldings $8,000 in additional damages.  In a subsequent conclusion
of law, the trial court concluded that the additional damages should be
$6,000.  When conclusions of law are in conflict with an earlier filed
judgment, the conclusions are controlling over the judgment.  Dickerson v.
DeBarbieris, 964 S.W.2d 680, 684 (Tex. App.CHouston
[14th Dist.] 1998, no pet.).  The Scotts=
fifth issue on appeal is sustained, and the trial court=s judgment is modified to reflect the additional
damages award of $6,000.








In
their sixth issue on appeal, the Scotts ask us to hold that the trial court
erred when it failed to consider offsets and credits in rendering its
judgment.  The argument is that the Spaldings paid only $8,387.67 on the
purchase price.  They reach this conclusion by using, as the starting point of
their argument, the $12,750 represented by the fifty-one checks of $250 each as
the total amount paid by the Spaldings on the purchase price.[1]
Although they do not count the $1,800 rent money from Jones County that they
diverted away from the Spaldings as being paid toward the purchase price, the
Scotts argue that the trial court should have offset that amount.  As the
Scotts have constructed their argument, an $1,800 offset would reduce the total
amount paid by the Spaldings on the purchase price to $10,950.  Next, the
Scotts claim that the $2,562.33 they paid for taxes should be offset and,
thereby, reduce the amount paid by the Spaldings to $8,387.67, an amount less
than the $10,000 purchase price.  Therefore, the Scotts conclude that the
purchase price was never paid and  that they were never obligated to deliver a
warranty deed to the Spaldings because the purchase price was never paid.

First,
the $1,800 belonged to the Spaldings, and an offset would not be proper.  Even
if we were to agree that the voluntary payment of taxes should be offset, which
we do not, the fifty-one checks less the $2,562.33 paid taxes equals
$10,187.67, an amount in excess of the purchase price.  Furthermore, although
the Scotts have cited us to one case regarding the standard of review
applicable to this issue, they have presented us no authority to show us why
the trial court=s
failure to offset the amount of the taxes, paid voluntarily by the Scotts after
the Spaldings had performed under the contract, was error.  We consider the
issue to be waived.  See Rule 38.1(h).[2] 
The Scotts= sixth
issue on appeal is overruled.

In
the seventh issue on appeal, the Scotts urge this court to hold that the trial
court erred when it awarded attorney=s
fees to the Spaldings.  The Spaldings presented no evidence on the issue of
attorney=s fees. 
Instead, they claim that the trial court could take judicial notice that the
attorney=s fees sought
were usual, customary, necessary and reasonable under Tex. Civ. Prac. & Rem. Code Ann. '' 38.003-.004 (Vernon 2008).  Tex. Civ. Prac. & Rem. Code Ann. ' 38.001 (Vernon 2008)
provides that reasonable attorney=s
fees may be recovered if the claim is for the following:  (1) rendered
services; (2) performed labor; (3)  furnished material; (4) freight or express
overcharges; (5) lost or damaged freight or express; (6) killed or injured
stock; (7) a sworn account; or (8) an oral or written contract.  








Section
38.003 creates a rebuttable presumption that the usual and customary attorney=s fees for a claim of the
type described in Section 38.001 are reasonable.  Section 38.004 allows the
court to take judicial notice of the usual and customary attorney=s fees.  At least two
courts have held that these provisions are not limited to those claims set out
in Section 38.001.  See, e.g., Main Place Custom Homes, Inc. v. Honaker,
192 S.W.3d 604, 622 (Tex. App.CFort
Worth 2006, pet. denied); Lefton v. Griffith, 136 S.W.3d 271 (Tex.  App.CSan Antonio 2004, no pet.);
Copeland v. Alsobrook, 3 S.W.3d 598 (Tex. App.CSan Antonio 1999, pet. denied).  However, we
agree with those courts that hold that, unless the claim is one set forth in
Section 38.001, the court may not take judicial notice that the usual and
customary fees are reasonable but, rather, the party must offer legally and
factually sufficient evidence on the issue.  See, e.g., Charette v.
Fitzgerald, 213 S.W.3d 505, 514-15 (Tex. App.CHouston
[14th Dist.] 2006, no pet.); Hasty Inc. v. Inwood Buckhorn Joint Venture,
908 S.W.2d 494, 502 (Tex. App.CDallas
1995, writ denied); Leggett v. Brinson, 817 S.W.2d 154, 159 (Tex. App.CEl Paso 1991, no writ). 
Because the trial court=s
judgment is based upon violations of the DTPA, this case is not a claim that is
described in Section 38.001.  The trial court abused its discretion when it
awarded attorney=s
fees based only on judicial notice under Sections 38.003 and 38.004.  The
Scotts= seventh issue
on appeal is sustained.

Normally,
when we find that there is no evidence to support a finding, the remedy is to
reverse and render on the point.  However, the award of attorney=s fees under the DTPA
presents a unique situation.  This is so because an award of attorney=s fees is mandated.  Tex. Bus. & Com. Code Ann. ' 17.50(d) (Vernon Supp.
2008).  The trial court shall award reasonable and necessary attorney=s fees.  Id. 
Therefore, here, the proper action is to remand the issue of attorney=s fees to the trial court
for a determination of the reasonable and necessary attorney=s fees to be awarded.  See
Leggett, 817 S.W.2d at159.  The seventh issue on appeal is sustained, and
the cause is remanded to the trial court for a determination of attorney=s fees in accordance with
this opinion.

The
judgment of the trial court is reversed with respect to its award of attorney=s fees and remanded to the
trial court for a proper assessment of those fees.  We modify the award of
additional damages by reducing the award to $6,000.  Otherwise, the judgment of
the trial court is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

January 30, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]We have not been told why the amount of the two checks
totaling $200 of additional payments are not included in the judgment.





[2]We note that, although the Scotts sought an offset and
credit, they made no counterclaim for the taxes they had voluntarily paid after
the Spaldings had paid for the property.