E. C. HIGGINBOTHAM *v.* T. L. KEARSE

(No. 7123)

Submitted October 28, 1931.    Decided November 3, 1931.

*England & Ritchie,* for plaintiff in error.

*J. N. Kenna* and *B. J. Pettigrew,* for defendant in error.

MAXWELL, JUDGE:

This is an action for damags for personal injuries to the plaintiff. At the conclusion of the introduction of the plaintiff's evidence, on motion of the defendant, the court struck out the plaintiff's evidence and directed a verdict for the defendant. Writ of error was awarded the plaintiff.

Defendant owns a building which fronts and binds on a public street of the city of Charleston. The apartments on the second floor of the building are reached by a stairway. The means of entrance to the stairs is a doorway in the front of the building at the street. The principal or "weather" door at this entrance swings on the inside. A screen door swings outward over the sidewalk. On the night of February 15, 1930, as plaintiff was walking past defendant's said building a man who had been visiting a tenant on the second floor and had descended the stairs and was just emerging from the building, pushed open the screen door which struck the plaintiff causing him to fall on the icy sidewalk with resultant serious injuries. This action for damages followed.

It is conceded that the question of negligence on the part of the defendant is not involved, but that the case must be determined on the queries, first, as to whether the defendant in keeping a screen door so as to swing over the public sidewalk for a part of its width was guilty of maintaining a public nuisance; and, second, as to whether the plaintiff was himself negligent. What constitutes a public nuisance is a question of law. 46 Corpus Juris, 812; *Price* v. *Travis,* 149 Va. 536, 140 S. E. 644. Whether a plaintiff is guilty of negligence

when he receives an injury from an alleged public nuisance is primarily a jury question, but it, too, may become a question of law on uncontradicted evidence.

Predicating his position on the proposition that "the right of the public to the use of streets, highways, sidewalks, and like public ways, is subject to the reasonable use thereof by the abutting owners for purposes other than travel," the defendant says that the mere permitting of a screen door to swing out over a sidewalk for a part of its width is a reasonable use of the sidewalk and does not constitute a public nuisance, and that liability does not attach *per se* to the owner of the building for injury to a pedestrian caused by the door's striking him when swinging open. Among other authorities, he cites our case of *Williams* v. *Coal Company,* 83 W. Va. 464, as follows: "But not every obstruction to the free and unrestricted use of a public road or street, even if unauthorized by the proper authorities constitutes a nuisance or is actionable in damages. The right of the public to the free and unobstructed use of a highway or street is subject to reasonable and necessary limitations and restrictions." Two Massachusette cases cited by denfendant, *O'Lnida* v. *Lothrop,* 21 Pickering 292, 32 Am. Dec. 261, and *Underwood* v. *Carney,* 1 Cush. 285, are authority for the proposition that a property owner may make a reasonable use of the sidewalk or highway on which his property abuts, and the first of the said two cases (approved in the second) seems also to support the proposition that a door or gate swinging over a street for a part of its width is a reasonable use thereof by an abutting property owner. In *Edwards* v. *Brayton,* 25 R. I. 597, cited by defendant, the court was dealing with a case which arose from an injury caused by the opening of a gate which, when opened, swung partly over a sidewalk. The court said: "The gate, constructed as alleged, might remain forever closed; and if it had remained so, the accident could not have occurred. Neither is it alleged that the gate was so constructed that it would inevitably become dangerous if carefully opened, and it is difficult to see how an ordinary gate of the height here stated could have been so constructed. If such a gate as is described were opened slowly and care-

fully, the visible motion would furnish sufficient notice to passers-by; and if opened violently, as alleged, the violent opening, not the neglect to notify of the capacity to be opened, would be the proximate cause of any injury which might ensue. The case on this point is governed by *Mahogany* v. *Ward*, 16 R. I. 479. Se also *McGough* v. *Bates*, 21 R. I. 213; *Afflick* v. *Bates*, 21 R. I. 281. The gate involved in that case was eight feet high and built in a solid board fence of that height. There was thus presented a situation almost identical with that of a door swinging outward from the wall of a building binding on a street, as at bar. Small gates in fences of open construction and moderate height may or may not be subject to a different classification from that which in our opinion must be made with reference to gates in high board fences of close construction and doors in buildings. The problem as to small gates can be solved when it arises. But with deference to the distinguished tribunals responsible for the above holdings we are not persuaded thereby.

We recognize and adhere to the principle already adverted to that the owner of property abutting a highway may make use thereof which is not consistent with the unimpeded use of the highway at all times by travelers whether on foot or in vehicle. Such use, however, must be reasonable, and above everything else, it must not involve a situation which savors of the characteristics of a trap, that is, there must not be employed any contrivance or instrumentality which may, in either a latent or an operating state, take by surprise and unawares a person using the highway and injure him. An instrumentality which in its normal operation may inflict serious injury on a pedestrian howsoever carefully he may be moving along the street is inherently dangerous and constitutes a menace to all persons using such public way. It is a public nuisance. The employment of such instrumentality is violative of fundamental principles of personal and property rights. It ignores the former and exaggerates the latter. What possible conception of property rights can justify a property owner in maintaining at the entrance of his building binding on a public street a door so hung on hinges that it must swing out when opened, and which may at any instant,

at the hands of an innocent user, be pushed into the face of a passing pedestrian? It may mar for life the countenance of a beautiful girl; it may cripple a little child; or it may hurl to the hard surface of the pavement an aged man and inflict grievous injury, as in this case. The law will not permit an owner of such instrumentality to stand free of responsibility for injury caused to another by such instrumentality, if the latter was free of negligence. Many decisions and texts sustain the principles underlying these statements. In the Irish Law Reports (1902, 1 I. R. 14) we find a case *(Atty. Gen'l. v. Mayo County Council et al.)* which involved a proceeding for the removal of a little hut which some kind-hearted and well-meaning persons, with permission of the Mayo County Council, had erected for two very poor people upon a piece of waste ground on an unused portion of a public highway. In granting a mandatory injunction for removal of the structure, the learned Master of the Roles said: ''The argument presented by counsel was, that if it be an obstruction it is inappreciable, on the ground that the absence of traffic renders it unimportant. If this were the test of its being inappreciable, very possibly the rule contended for by Mr. Clancy (of counsel for defense) might apply. But in my opinion no rule as to inappreciability applies except where the obstruction is temporary in its character, as where a man empties a load of turf on the wayside and then shortly afterwards comes and takes it away, or where it is so small in extent that it could not under any circumstances impede traffic.''

In the English case of *Barnes* v. *Ward*, 9 C. B. 392, 137 English Reprints, 945, there was a claim for damages by a pedestrian who had fallen into an excavation made by the defendant on his own property adjoining a public way. In summing up, the court said: ''The result is,—considering that the present case refers to a newly-made excavation adjoining an immemorial public way, which rendered the way unsafe to those who used it with ordinary care,—it appears to us after much consideration, that the defendant, in having made that excavation, was guilty of a public nuisance, even though the danger consisted in the risk of accidentally deviating from the road; for, the danger thus created may

reasonably deter prudent persons from using the way, and thus the full enjoyment of it by the public is, in effect, as much impeded as in the case of an ordinary nuisance to a highway." In the later English case of *Tarry* v. *Ashton*, found in the Law Journal of 1876, at page 260, it appears that the plaintiff who was passing along a street was injured by the falling of a lamp which projected overhead from defendant's property. The court held "that it was the absolute duty of the defendant, as occupier of premises having a lamp in such a position, to prevent its becoming dangerous to the public; that if, in fact, it did become dangerous it was a nuisance, and for any injury caused by such nuisance defendant was liable; and that he could not shift the liability arising from such a duty from himself by having employed a competent person to do the necessary repairs."

The New York case of *Holroyd* v. *Sheridan*, 65 N. Y. S. 442, was predicated on a serious injury suffered by a woman in being struck by barn doors which swung open as she was passing along the sidewalk adjacent to which the barn was situated. In sustaining the right of the complainant to recover of the owner of the property, the court said: "That this construction (doors opening over sidewalk) constitutes *prima facie* a nuisance seems to us clear. It hazarded the use of the sidewalk by those who had a right to its free use without peril. Whether the injury occurred by negligently permitting the wind to blow open the doors, or by negligently throwing back the doors, the improper construction of the doors that could be thus negligently made a cause of injury to those lawfully using the walk would seem to be an infringement of the rights of the public and a wrong." And, further, in the opinion there appears this pertinent quotation from the case of *Tinker* v. *Railway Co.*, 157 N. Y. 318, 51 N. E. 1032: "The primary purpose of highways is use by the public for travel and transportation, and the general rule is that any one who interferes with such use commits a nuisance. * * *" In *King* v. *Hartung*, 123 Va. 185, there was involved a claim for damages for injury to a small boy caused by a heavy wagon gate falling on him while he was in a public way. The gate had been imperfectly hung in a fence flush

with the street line. In its opinion, the court referred to certain earlier Virginia cases wherein injury had been caused by awnings which hung over the street. The court said: "There can be, as we think, no rational distinction between a danger to the public from an awning which, so long as it remains in place, is absolutely harmless, even though it does project over the sidewalk, and such a danger from a gate, which, so long as it remains in place, is absolutely harmless, even though it does not project over the sidewalk; provided, in either case, if the object falls, it must fall on the street."

Further in said opinion, the court quotes applicably from 1 Thompson on Negligence, sec. 1199, as follows: "The owner of property abutting on a highway is under a positive duty to keep it from being a source of danger to the public by reason of any defect in structure, repair, use or management which reasonable care can guard against. Reasonable care must be exercised by such owners to keep their buildings safe, to the end that they do not fall in whole or in part, or that objects do not fall over them, injuring passers-by on the sidewalk or street; but such an owner is not a guarantor or an insurer of the absolute safety of the sidewalk, and proof of negligence on his part is necessary to charge him with liability for an injury received thereon."

In *McCrorey* v. *Garrett*, 109 Va. 645, 64 S. E. 978, (being the latter of the two "awning" cases referred to in *King* v. *Hartung, supra*) the Virginia court quoted with approval from *Congreve* v. *Smith*, 18 N. Y. 79, as follows: "The general doctrine is that the public are entitled to the street or highway in the condition in which they placed it; and whoever, without special authority, materially obstructs it, or renders its use hazardous, by doing anything upon, above or below the surface, is guilty of a nuisance; and, as in all other cases of public nuisances, individuals sustaining special damage from it, without any want of due care to avoid injury, have a remedy by action against the author or person continuing the nuisance. No question of negligence can arise, the act being wrongful." In accord with the Virginia court we perceive no distinction in principle between the liability of a property owner for injury caused to an innocent person

by a falling awning or by a falling door or gate. But suppose an injury is caused not by a falling door but by its being swung open partly across a sidewalk? Does that make a difference in liability? Is the owner thereof any less responsible for a gate or door so hung on hinges that when it is opened it strikes a passer-by and injures him, than he is for a gate so insecurely hung on hinges that it falls into the street and causes injury? In our judgment the principle is the same, and in either instance, the property owner is responsible. "It would seem that all signboards, cornices, blinds, awnings and other things projecting over a walk, or so situated with reference thereto that if they fall they may do injury to travelers, as well as things set against the building, or swinging doors, are nuisances, unless so secured as to be absolutely safe, and the person maintaining them is liable for all injuries arising therefrom, except such as are attributable to inevitable accident." 1 Wood on Nuisances (3rd Ed.), page 350. In two cases, this court has declared that awnings erected over public sidewalks without lawful authority and supported by posts at or near the curb are public nuicances. *Davis* v. *Spragg*, 72 W. Va. 672; *City of Martinsburg* v. *Miles*, 95 W. Va. 391.

In the Missouri case of *Campbell* v. *City of Chillicothe*, 144 S. W. 408, the city was held liable in damages for injuries sustained by a pedestrian by coming in contact with a privately owned gate which was standing open partly across the sidewalk on which the plaintiff was traveling. A door which swings open suddenly may easily be as great a menace to the safety of passers-by as a gate which stands open. The menace may be far greater; for example, if in daylight or on a well lighted street at night a door or gate is standing open, partly obstructing a sidewalk, a passer-by can see the obstruction and avoid it. The menace is less than if, seeing nothing to indicate danger, his progress is suddenly and abruptly interrupted by the unanticipated opening of a door—a blow to his person resulting.

In *O'Hanlin* v. *Oil Company*, 54 W. Va. 510, this court declared the law to be that streets and sidewalks are designed for the use of the public, and that the use of them by an

individual for his own convenience and accommodation is essentially a nuisance, that "such individual is liable for all damages sustained in consequence of improper appropriation of the street or sidewalk to his mere personal use." It must be borne in mind, too, that a traveler is ordinarily entitled to use any portion of the full width of a public way that may suit his convenience. *Price* v. *Travis, supra.* In the instant case the plaintiff was using the side of the pavement next to the building because the footing was better there and the press of the storm less severe.

The defendant relies on the case of *Post Adm'r.* v. *City of Clarksburg,* 74 W. Va. 48, as sustaining his position that he is not guilty of maintaining a nuisance. That case was predicated on a fatal injury to a boy of eleven years who, through childish impulse, thrust his head and shoulders into or under the frame work of an elevator in a sidewalk, and was crushed as the elevator was lowered by an operator unaware of the child's presence. The elevator was so constructed that when not in use it was covered over so as not to leave any defect in the sidewalk, and when in use was not dangerous to pedestrians. In the opinion the court noted that "the fatal injury resulted not from the ordinary use of the sidewalk or any defect in it, but from the thoughtless act of the boy in projecting his head under the machine * * *." The dissimilarities between the facts of that case and the one at bar are manifest and need not be elaborated here.

It does not appear from the record whether the trial court's action in striking out the plaintiff's evidence and directing a verdict for the defendant was predicated on the opinion that the defendant was not maintaining a public nuisance, or on the opinion that the plaintiff was guilty of negligence which was the proximate cause of his injury. We cannot sustain the ruling on either theory.

We reverse the judgment, set aside the verdict, and remand the case for a new trial.

*Reversed and remanded.*