**CINCINNATI & SUBURBAN BELL TELEPHONE COMPANY, Appellant, v. EADLER, Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 6450. Decided December 11, 1944.

Frost & Jacobs, Cincinnati, for appellant.

Nichols, Wood, Marx & Ginter, Cincinnati, and Harry Kasfir, Cincinnati, for appellee.

## OPINION

By MATTHEWS, J.

The plaintiff in this action seeks to recover for damages to equipment which the City of Cincinnati had authorized it to install in Queen City Avenue, one of its public streets, beneath the sidewalk, and which the defendant disturbed while excavating preparatory to erecting a building on an abutting lot. The jury returned a verdict for the defendant upon which judgment was rendered. This appeal is from that judgment.

The equipment consisted of telephone and firealarm cables, protected by tile conduits. The sections of the conduit weighed about ninety pounds each and were located about five feet below the sidewalk. There was a man-hole constructed

to furnish access to the conduit, and counsel disagreed as to its exact location. It was claimed that the man-hole wall extended about three inches beyond the street line into private property. An examination of the record discloses that the defendant did testify that after the excavation had been made and the soil on the side and underneath had been disturbed it did encroach about three inches onto the private property, but he did not assume to testify as to its location prior to the commission of the acts complained of in this case, and the survey showed and the testimony of all the other witnesses—both those called by the defendant as well as those called by the plaintiff—was that the man-hole was entirely within the street lines prior to the acts of the defendant in removing the support. We find that there was no evidence—certainly, no substantial evidence—to the contrary. We shall, therefore, consider the case as one relating to property placed beneath the street surface within the street lines under permission of the municipality. The equipment being for the purpose of telephone and fire alarm communication furnished by a public utility, there can be no doubt that it was a public purpose.

There is no evidence as to the terms of the original dedication. Whether the municipality owned the absolute fee or a conditional fee for street purposes cannot be determined. We must presume that conditions existed which authorized the granting of the permit to the plaintiff to place its equipment in the street. The weight of authority is that even though the title to the street is for street purposes, such a use would be justified. **39 O Jur 76.**

The conduits and the cables enclosed thereby were the plaintiff's property rightfully located in the public street, serving a public purpose. While the defendant exercising the rights of an abutter had certain rights beyond those of the general public, such rights were subordinate to all the uses for which the street could be used by the public.

It is not contended otherwise in this case.

The fact, therefore, that the defendant stood in the position of the abutting owner gave him no right to use the sub-surface of the street to the exclusion of the plaintiff, standing in the right of the municipality. If otherwise unjustified, that fact did not authorize it.

Furthermore, in determining the rights of these parties—the plaintiff is in the position of a possessor of the cables, conduits, and manhole, with all the rights incident thereto. 1 Restatement of Law of Torts, (sec. 216) 551. The law pro-

tects that possession and any invasion of it without just cause or excuse to its damage would create a liability in its favor without regard to whether the invasion was the result of an intentional act. 2 Restatement of Law of Torts, (sec. 281), 734.

In Philadelphia Fire & Marine Ins. Co. v Hirschfield Printing Co., —— Ohio App., ——; 53 N. E. (2d) 827, this Court quoted at page 828 from 38 Am Jur., 656, that: "The law does impose upon every member of society the duty to refrain from conduct of a character likely to injure a person with whom he comes in contact, and to use his own property in such a manner as not to injure that of another."

That rule is of universal application. Whenever and whereever one person comes into such proximity to the person or property of another, a duty arises to refrain from conduct likely to cause injury or damage.

In our view, it is not in law vital to the plaintiff's action to prove that its equipment was rightfully in the street. If its right were challenged by the municipality, a different question would be presented.

The defendant made a contract with the abutter to construct a building on his lot including the necessary excavating. He sublet the excavating to an independent contractor, who, in turn, sublet the work to another. This sub-sub-contractor removed the earth on the lot up to the street line to a depth of more than ten feet. No shoring was done and evidently some of the earth from the street fell into the excavation. It is admitted that the man-hole structure and the conduits were exposed to view from the excavation. It was then discovered that the soil would not furnish a secure footing unless the base was made larger than the width of the proposed wall. It was concluded to make a concrete footing five feet wide upon which to set the wall. To do so the earth was removed for a distance of twenty-five inches into the subsoil of the street under the conduits and man-hole structure. While that condition existed, a rather heavy rain fell and, as a result, more soil was washed from under the man-hole and conduits, and the sidewalk cracked and moved, the man-hole walls cracked, and the conduits were left suspended on the cables without supporting foundation, producing a condition that made it necessary for the municipal authorities to immediately exclude the public from the use of that portion of the street by barricading it. And all this excavating was done without notice to the municipality or

the plaintiff and without giving either an opportunity to adopt protective measures. It was for the cost of restoring the status quo ante that this action was brought.

Certain municipal ordinances were pleaded and either admitted or proven. These required all excavations to be guarded and protected to prevent them from becoming dangerous, and to be sheet piled, braced or shored where necessary to prevent the adjoining earth from caving and when the excavation extended within one foot of the angle of repose of the soil under any footing or foundation protection by under-pinning against settlement was required. Another ordinance required the replacement of any lateral support at the expense of the person who removed or disturbed the lateral support.

It is clear, we think, that the removal of the supporting soil was a violation of the right of the municipality to have the street supported by the adjoining soil, even though there had been no invasion of the subsoil. Such an unguarded excavation immediately adjoining a public street is a public nuisance both at common law and under the ordinances, and creates liability for injury and damage directly resulting therefrom. 25 Am. Jur, (sec. 280), 573, et seq., 2 Restatement of Law of Torts (sec. 364) 1987. And entering the street and removing the sub-soil resulting in the injury to the street so as to make it unfit and dangerous for use by the public constituted a more direct invasion of the public right. **28 O Jur, sec. 396, p. 625.**

The person thus violating the public right and actively creating a dangerous condition in the street would clearly be liable to the municipality and the traveling public for all damage directly resulting from such condition. We are equally clear that liability is created in favor of a public utility company that has placed its equipment on or under the street by permission of the municipality.

It serves no purpose to debate whether the act of the defendant causing the damage should be considered intentional or negligent. The removal of the lateral support and the sub-soil was intentional and the recoverable damage is limited to such as directly resulted. A person is presumed to intend the natural consequences of his acts. Taking adequate measures to avoid the natural consequences would not have destroyed the intentional nature of the acts, but would have prevented the damage. Any less than adequate measures to prevent the damage would have been immaterial—or, if it is preferred, negligence.

In **Taylor v Cincinnati, 143 Oh St 426,** at 432, the Court said:

"To properly consider and determine tortious liability in accordance with legal principles, it is necessary to differentiate and classify the several types of tortious conduct. In general, they may be designated as follows: (1) Culpable and intentional acts resulting in harm; (2) acts involving culpable and unlawful conduct causing unintentional harm; (3) non-culpable acts or conduct resulting in accidental harm for which, because of the hazards involved, the law imposes strict or absolute liability notwithstanding the absence of fault; and (4) culpable acts of inadvertence involving unreasonable risks of harm.

"Strict or absolute liability is always applied where one does anything or permits anything under his control or direction, to be done, without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights. In such case the actor commits an intentional act involving a culpable wrong. Where the harm and resulting damage are the necessary consequences of just what the defendant is doing, or is incident to the activity itself or the manner in which it is conducted, the law of negligence has no application and the rule of absolute liability applies."

And, at page 434:

Furthermore, if harm is caused to another by reason of any unlawful act on the part of the defendant, the latter is liable without reference to the care exercised in the commission of such act. A person who does an act unlawful per se becomes in respect to it, an insurer and is liable for loss resulting from harm which may happen in consequence of it to persons exercising ordinary care, irrespective of the degree of skill and diligence exercised by himself, his agents or servants to prevent such injury. **Gas Fuel Co. v Andrews, 50 Oh St 695,** 35 N. E., 1059, 29 L. R. A. 337 (gas explosion, statute creating liability for failure to control gas); Higginbotham v Kearse, 111 W. Va., 264, 161 S. E., 37, 77 A. L. R., 1110 (outward-swinging screen door opening over sidewalk, injuring pedestrian). The rule applies especially to the creation or maintenance of a public nuisance by a private person, which always involves an unlawful act.

"For instance, a private individual has no right to interfere with a highway or street without first obtaining per-

mission from the proper authority, and to do so without such permission constitutes an absolute wrong and renders the wrongdoer liable as an insurer. It matters not whether he is prudent or careful, as he is bound to keep the highway safe at his peril."

Many authorities are cited in support of the Court's statement of the law. Further citation here is unnecessary.

In addition to the claim that the man-hole structure encroached upon the abutting land and was a circumstance tending to prove contributory negligence, it was also claimed that the man-hole cover had become covered and concealed by dirt and other substances and that that furnished a basis for submitting to the jury the issue of contributory negligence. It should be mentioned here that it was the act of the property owner and not the plaintiff that caused the man-hole to be concealed, but disregarding that, we fail to see how either or both of these facts could have any tendency to prove a defense to this action, whether such defense be given the name of contributory negligence or otherwise. The defendant became aware of the presence of the man-hole and the conduits while excavating and had full opportunity to safeguard them from the natural consequences of his acts, and he chose to continue without taking any protective measures.

We hold that the evidence presented no defense based on the negligence or other fault of the plaintiff.

In the pleadings and the trial of this case, the parties and court employed the nomenclature strictly appropriate only to tort actions based on negligence. Perhaps most frequently this language is used in treating cases in this category, and the phrase "negligence per se" is employed to denote absolute liability. Ordinarily, no harm results, but in this case we think it misled the court, and, as a result, error resulted in the statement of the issues and the law.

As already stated there was no issue of contributory negligence. And inasmuch as the defendant admitted that he employed the person who removed the support, there could be no issue of fact as to that unless the evidence tended to show that the person employed was an independent contractor over whom he did not in fact exercise any control as to the mode and manner of doing the work, and unless the law would exculpate him if such were the fact. As to the evidence, we find that conflicting inferences can be drawn, but as to the law, it is our conclusion that the defendant could not avoid liability by employing an independent contractor to do this work.

The defendant had no right under any circumstances to disturb the surface of the street by removing the sub-soil. His right to remove the lateral support was conditioned upon being properly guarded and prevented from becoming dangerous by being sheet piled, braced or shored. In the absence of performance of the condition, the removal of the lateral support was unlawful. Whoever actively participates in such violation of public and private right, whether as owner, contractor, or sub-contractor, becomes liable for the damage naturally resulting therefrom.

The law and ordinances on this subject were enacted for the protection of public and private rights because the danger from such work was necessarily present. There is no conflict in the authorities. We refer only to a few to indicate what we have in mind. **Richmond Bros. v Miller, 131 Oh St 424; Covington & Cincinnati Bridge Co. v Steinbrock, 61 Oh St 215;** Scheller v Silbermintz, 98 N. Y. Supp., 230; Weber v Buffalo Railway Co., 47 N. Y. Supp., 7, and the very instructive case of Reuben v Swigert, 15 C. C. 565.

The plaintiff requested the court to instruct the jury that:

"I charge you that the performance of the duty of using ordinary care to ascertain in advance whether or not there were telephone cables, conduits and a manhole located in Queen City Avenue in such close proximity to the Longo property as probably to be affected by the proposed excavation and the duty of giving notice to the Cincinnati and Suburban Bell Telephone Company of his intention to excavate if he knew or had reasonable cause to know of the existence and approximate location of its cables, conduits and man-hole, rested primarily upon defendant Eadler and were absolute and nondelegable duties from which he could not be relieved by any contract with a third party."

While this charge does not state the rule of liability as strongly as the law justifies, that defect was not prejudicial to defendant, and it does state the correct rule as to nondelegable nature of defendant's duty. This rule of law was not stated in any other special charge. It was error to refuse to give it.

As we view this record the evidence presented no issue of contributory fault on plaintiff's part and none on defendant's part. It showed fault as a matter of law by defendant and none by the plaintiff. The only issue of fact was the

extent of the damage resulting from the tortious conduct of the defendant. Within the ambit of the issue of the measure of damage is the subordinate one of whether, or to what extent, the plaintiff's damage resulted from an unprecedented rain.

We believe what we have said covers all the assignments of error. Specifically, the judgment is reversed for error in submitting the issues of contributory negligence and the defendant's fault, and for refusal to give the special charge upon the subject of the effect of the employment of an independent contractor.

The cause is remanded for further proceedings according to law.

ROSS, P. J., HILDEBRANT & MATTHEWS, JJ., concur in syllabus & opinion.