DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, J.R., a juvenile, appeals the judgment of the Medina County Juvenile Court sentencing him to five years in prison; a sentence which was stayed pending successful completion of a three year sentence at the Ohio Department of Youth Services. We affirm the judgment of the Medina County Juvenile Court.
 {¶ 2} On February 2, 2004, a delinquency complaint was filed in the Medina County Juvenile Court, charging Defendant with Involuntary Manslaughter in violation of R.C. 2903.04, Felonious Assault, in violation of R.C. 2903.11(A)(2), and Tampering with Evidence, a violation of R.C. 2921.12(A)(1). On February 10, 2004, the State filed notice of intent to seek discretionary serious youthful offender status pursuant to R.C. 2152.11(A)(1), (D)(2)(a), and 2152.13(A)(4)(a). On February 18, 2004, Defendant was indicted by the Medina County Grand Jury for Involuntary Manslaughter, Felonious Assault, and Tampering with Evidence, as charged in the above noted complaint. The indictment contained serious youthful offender specifications for the charges of Involuntary Manslaughter and Felonious Assault. Defendant entered a plea of not guilty to the indictment.
 {¶ 3} Defendant's case proceeded to a trial by jury on the counts of Involuntary Manslaughter and Felonious Assault, and he was tried to the court for Tampering with Evidence. On May 7, 2004, the jury found Defendant guilty of Involuntary Manslaughter under R.C. 2903.04(A), a first degree felony, and of Felonious Assault under R.C. 2903.11(A)(2), a second degree felony. Both counts contained the specification that the defendant was a serious youthful offender.
 {¶ 4} A juvenile found to be a serious youthful offender, under R.C. 2152.13, is given a traditional juvenile disposition and an adult sentence, which is stayed pending successful completion of the juvenile disposition. Defendant was sentenced to a five year prison term followed by three years of post-release control. His sentence was stayed pending successful completion of the traditional juvenile disposition. In accordance with the traditional juvenile disposition, Defendant was sentenced to three years, until he attains the age of 21, at the Ohio Department of Youth Services.
 {¶ 5} Defendant appeals his sentence, raising six assignments of error for our review.
 ASSIGNMENT OF ERROR I
"There was insufficient evidence to support the jury verdicts and findings of delinquency, and [Defendant's] convictions/adjudications for felonious assault and involuntary manslaughter were against the manifest weight of the evidence."
 {¶ 6} In his first assignment of error, Defendant maintains that his convictions for felonious assault and involuntary manslaughter were supported by insufficient evidence, and were against the manifest weight of the evidence. We disagree.
 {¶ 7} While sufficiency of the evidence and manifest weight of the evidence are legally distinct issues, we note that a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.Cuyahoga Falls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735, at 5. Sufficient evidence is required to take a case to the jury, therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes with it a finding of sufficiency of the evidence. State v. Roberts
(Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. Therefore, we will focus our discussion on whether Defendant's convictions were against the manifest weight of the evidence.
 {¶ 8} When a defendant maintains that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 9} This court may only invoke the power to reverse based on manifest weight in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id. Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility.Sykes Constr. Co. v. Martell (Jan. 8, 1992), 9th Dist. Nos. 15034 and 15038, at 5-6.
 {¶ 10} Defendant was convicted of involuntary manslaughter pursuant to R.C. 2903.04 and felonious assault in violation of R.C. 2903.11(A)(2). Felonious assault under 2903.11(A)(2) states that "[n]o person shall "knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon[.]" One acts knowingly when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Involuntary manslaughter under R.C. 2903.04(A) provides that: "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 11} It is not contested that the victim in this case, Matthew Twigg, died as a result of a knife wound to his abdomen, nor is it contested that the knife was a deadly weapon. The issue is whether, by inflicting the knife wound, Defendant committed a felony, in this case felonious assault. Thus, for Defendant's conviction to be upheld, the State must have shown that Defendant "knowingly" caused or attempted to cause physical harm to Matthew Twigg. In this case, the State presented substantial evidence that Defendant intended to "cut" Matthew Twigg with a steak knife. Consequently, we find that Defendant's conviction was not against the manifest weight of the evidence as Defendant argues.
 {¶ 12} The events surrounding this case commenced on January 31, 2004. On that day, Defendant, 16, Matthew Twigg, 15, and Jesse Zawistowski, 15, were at Defendant's mother's house while she was at work. The boys had smoked marijuana together in Defendant's room. After they had finished smoking, Defendant and Twigg started wrestling. Twigg put Defendant into a headlock. Defendant stated that he could not breathe or speak. Defendant found a kitchen steak knife lying nearby on the floor. He picked up the knife and, according to his trial testimony, he intended to "prick" Twigg in the leg. Defendant stated that as they were wrestling, Twigg fell on top of him, and they both landed on the floor while the knife was still in Defendant's hand, which is how Twigg was injured. The boys then got up, shook hands, and apologized to each other. Twigg then stated "well, let's see the battle wound." Twigg lifted up his shirt and revealed an abdominal wound with some blood coming out of it, no more blood than a nosebleed, according to Defendant. The three boys then left Defendant's bedroom and went into the living room.
 {¶ 13} Neither Defendant nor Zawistowski thought that Twigg was badly injured. However, when Zawistowski asked Twigg while they were in the living room if he was all right, Twigg responded that he was not. Twigg asked Defendant if he could use the phone to call 911. Defendant told him not to call 911 from the house since he was on probation and did not want police at his house. Defendant told Twigg to go to a credit union that was next door to the house to make the call. Twigg left to call 911 from the credit union, which turned out to be closed.
 {¶ 14} Effie Smith, her daughter, Valerie, and her two-year-old son drove up to the credit union to use the ATM. They saw Twigg lying in the parking lot, and Valerie recognized him. Twigg asked them for help. Valerie thought that he was probably joking and Effie went into use the ATM. When she returned, Twigg had moved closer to her car and told her that he had been stabbed and needed help. Effie told Valerie to go to her grandmother's house across the street and call 911. Effie stayed with Twigg and asked what had happened. He said that he and Defendant were playing and he ended up being stabbed with a big knife. While this was going on, Defendant was standing in the doorway to his house watching. Effie had motioned for him to come over to where they were, which he did. When he got there, he knelt down beside Twigg. Defendant told him that things would be okay and to stay awake.
 {¶ 15} The ambulance arrived and took Twigg to Wadsworth-Rittman Hospital to stabilize him. Twigg's blood pressure had been dropping drastically, and the emergency medical technician suspected that he had suffered some type of organ damage and had internal bleeding. Twigg was life-flighted from Wadsworth-Rittman Hospital to Akron General Hospital where he went into surgery. At 11:44 that evening, Matthew Twigg died.
 {¶ 16} Defendant now claims that his conviction should be overturned because the State did not establish that the wound was caused knowingly, but rather, it was the result of an accident. Defendant presented evidence that the two boys had been wrestling in his room. Twigg had Defendant in a headlock and Defendant was having a hard time breathing. Defendant then grabbed a knife from his bedroom floor intending to "prick" Twigg in the leg so that Twigg would let Defendant go. Defendant then testified that he was "going to go prick [Twigg]. That's when [Twigg] forced his body on [Defendant] and [he] fell to the ground with [Twigg] on top of [him]." The boys then stood up, shook hands and apologized to each other.
 {¶ 17} Admittedly, the testimony presented shows that the boys were just horsing around. Even Twigg himself told Effie Smith that he and defendant "were just playing" when he was stabbed. However, the issue is not whether Defendant and Twigg were mad at each other, or whether Defendant intended to inflict a deadly injury, but whether he was aware that his conduct would probably injure Twigg. See R.C. 2903.11(A)(2), and R.C.2901.22(B).
 {¶ 18} Through the testimony of a number of witnesses, the State attempted to prove that the stab wound was not an accident, which is what the jury ultimately believed. Dr. Sterbenz, a medical examiner for Summit County testified that the knife that had caused the fatal injury had penetrated the abdominal wall, incised the diaphragm, penetrated the entire thickness of Twigg's liver and damaged the porta hepatic, the major vein of the liver. Dr. Sterbenz contradicted Defendant's testimony that the stab wound had been an accident. He testified that the wound track the knife caused was about six inches long. The knife that was used was only four and one half inches long. The difference in the length of the wound was caused, he stated, by compression of the body as a result of the knife being forcefully driven into the abdomen. Dr. Sterbenz further testified that the bruising that he saw on Twigg was characteristic of a forceful stab wound.
 {¶ 19} To show some consciousness of guilt, the State offered the testimony of Defendant's brother, Edward Rowe III who stated that he had gone to his mother's house (the house that Defendant lived in) and met with a police detective who had been looking for the knife that had caused the injury. The detective had told Edward what had happened and asked him to locate the knife. Edward eventually located the knife in a closed bag behind his mother's bed and called the detective. He stated that there were "streams of blood" on the knife.
 {¶ 20} Officer Kovil, a patrol officer for the Wadsworth Police Department, testified that he responded to the 911 call. He ended up taking Defendant to the Wadsworth Police Department and reading him his Miranda rights. Officer Kovil testified that Defendant stated to him that he and Twigg had been wrestling and Twigg had put Defendant into a headlock so that Defendant could not breathe. Defendant then stated that "he took the knife and stabbed [Twigg]." Defendant then showed the officer a stabbing motion with his left hand. "He demonstrated with his left hand about two, two-and-a-half inches * * * [that] he put the knife in." Officer Kovil testified that Defendant had told him that he had meant to cut Twigg, not to stab him. According to Officer Kovil, Defendant did not state, at that time, that he wanted to "poke" Twigg, but rather, that he wanted to cut him with the knife.
 {¶ 21} Officer Shannon, another patrolman for the City of Wadsworth, took Defendant's photograph for the booking process. Officer Shannon was present with Officer Kovil and asked Defendant if he wanted to make any statements after Defendant had been Mirandized. Defendant stated that:
"Twigg grabbed him around the neck while he was wrestling and he felt as if he was being choked.
"While he was being grabbed around the neck, he said he felt like he started to pass out, reached up, and grabbed the knife. * * *
"After grabbing the knife, he stated that he was just trying to cut Matt Twigg and didn't mean to stab him."
 {¶ 22} The jury was shown a video tape of the discussion between the two officers and Defendant. The video tape had no sound, but the jury was shown the portion of the tape in which Defendant had demonstrated to the officers how he had injured Twigg with the knife. Officer Shannon stated that Defendant was asked if he had any injuries or marks and he was asked to lift his shirt so that they could see. Defendant did so on the video and no marks were visible according to the officer's testimony and the video tape.
 {¶ 23} As shown above, the jury was presented with conflicting stories of the events of January 31, 2004. The prosecution's claims, if believed, show that Defendant knowingly "cut" or even "poked" Twigg with a knife. Regardless of Defendant's purpose, he knew that cutting or poking someone with a knife, an undisputedly deadly weapon, would cause some injury. The proximate cause of the injury in this case was death.
 {¶ 24} `"On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.'" State v.Wolery (1976), 46 Ohio St.2d 316, 331, quoting State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Similarly, when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony. SeeState v. Warren (1995), 106 Ohio App.3d 753, 760.
 {¶ 25} When determining whether a conviction was against the manifest weight of the evidence, the appellate court decides whether the `"jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Williams,99 Ohio St.3d 493, 2003-Ohio-4396, at ¶ 83, quoting State v. Martin
(1983), 20 Ohio App.3d 172, paragraph three of the syllabus. This is not such a case. "This Court will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other." State v. Hall (Sept. 20, 2000), 9th Dist. No. 19940, at 9, citing State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. The evidence persuades us that the jury neither lost its way nor created a manifest miscarriage of justice in convicting Defendant of felonious assault and involuntary manslaughter. Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The juvenile court erred by permitting the prosecution to repeatedly use [Defendant's] invocation of his right to counsel as substantive evidence of guilt/delinquency in its case-in-chief and in closing argument, in violation of [Defendant's]Fifth Amendment right against self-incrimination and the due process clause of the Fourteenth Amendment."
 {¶ 26} In his second assignment of error, Defendant maintains that the trial court erred by permitting the prosecution to use Defendant's invocation of his right to counsel as substantive evidence of guilt in its case-in-chief and in its closing argument.
 {¶ 27} Defendant lists a number of occasions where his invocation of his right to counsel was commented upon during trial. However, Defendant concedes that Defense counsel failed to object to the comments, therefore, this Court may reverse the judgment below only if the comments equated to plain error.State v. Twyford (2002), 94 Ohio St.3d 340, 355. Pursuant to Crim.R. 52(B), a plain error or defect in the proceedings that affects a substantial right may be addressed by an appellate court even though it was not brought to the attention of the trial court. The error, however, must be obvious, that is it should have been apparent to the trial court without an objection. State v. Kobelka, 9th Dist. No. 01CA007808, at 4-5. Where plain error is alleged, the decision of the trial court will not be reversed unless the defendant established that the outcome of the trial would clearly have been different but for the alleged error. Id.
 {¶ 28} State v. Leach, 102 Ohio St.3d 135, 2004-Ohio-2147, provides that pre-arrest, pre-Miranda silence used as substantive evidence of guilt is inadmissible. With regard to the comments referring to Defendant's invocation of his right to counsel in the State's case in chief, we find that they were not used as substantive evidence of guilt, but rather, they were introduced as evidence of the course of the investigation. See Id. at ¶ 33. Defendant has pointed to five instances during his trial where police officers responded, when asked, that Defendant was not responsive to questioning, but rather he asked for an attorney. In each case, the reference to Defendant's invocation of his right to counsel was not elicited by the prosecutor's questions, but was noted only as part of the officers' testimony as to the reason the complaint was eventually filed against the Defendant. While we do not condone references to a defendant's invocation of his right to an attorney either pre-arrest, pre-Miranda or post-arrest, Defendant has failed to meet his burden of proving that the admission of the statements amounted to plain error. SeeLeach, 102 Ohio St.3d 135, and Kobelka, supra.
 {¶ 29} With respect to the prosecutor's comments regarding Defendant's invocation of his right to counsel during closing arguments, we do not find that the comments were used as substantive evidence of guilt because the jury was instructed that "the closing arguments of counsel are not evidence. * * * [T]hey're not to be considered as evidence." Since it is presumed that the jury will obey the trial court's instructions, we find that the jury did not consider the prosecution's closing remarks as substantive evidence of Defendant's guilt. See State v.Short (Oct. 9, 1991), 9th Dist. No. 1995, at 3, citing State v.Dunkins (1983), 10 Ohio App.3d 72, 73.
 {¶ 30} Defendant has not shown that the result of the trial would clearly have been different had the contested comments not been made. Sufficient evidence was introduced supporting Defendant's conviction. Defendant himself stated that he intended to "prick" Twigg. Assuming Defendant's intention was merely to "prick" or poke Twigg, his conviction would still be upheld. The law presumes that a defendant intends the natural consequences of his acts, which in this case was poking someone with a steak knife. See Cincinnati Suburban Bell Tel. Co. v. Eadler
(1944), 75 Ohio App. 258, 263.
 {¶ 31} While Defendant may not have purposefully inflicted an injury on Twigg that resulted in his death, the evidence shows that Defendant did intend to poke or prick Twigg with a steak knife. The culpable mental state required for conviction of involuntary manslaughter is the culpable mental state of the underlying crime, in this case, knowingly causing or attempting to cause physical harm by means of a deadly weapon. See Stanleyv. Turner (6th Cir. 1993), 6 F.3d 399. As we established above, a steak knife used to inflict injury is a deadly weapon. By Defendant's own testimony, it was established that he either knowingly caused or knowingly attempted to case harm to Twigg. Since the law presumes that Defendant intended the natural consequences of the act of poking someone with a steak knife, which in this case, was a severe, fatal, knife injury, the evidence supports Defendant's conviction. See State v. Gibson,
6th Dist. No. S-02-016, 2003-Ohio-1996, at ¶ 20.
 {¶ 32} In light of the above, Defendant has not met his burden of establishing plain error due to the fact that he cannot show that the outcome of his case would have been different had it not been for the comments regarding his request for an attorney. See Kobelka, at 4-5. As noted in the discussion of Defendant's first assignment of error, Defendant's conviction was supported by the manifest weight of the evidence regardless of any comments made by the prosecutor. We, therefore, overrule Defendant's second assignment of error.
 ASSIGNMENT OF ERROR III
"The juvenile court erred in admitting three gruesome autopsy photographs into evidence, which only served to inflame the jury."
 {¶ 33} In his third assignment of error, Defendant claims that it was in error that the juvenile court admitted three autopsy photographs into evidence because their gruesome nature served only to inflame the jury.
 {¶ 34} In this case, the State argues that introduction of the autopsy photographs was relevant to establishing Twigg's cause of death and the photos were necessary to "demonstrate[e] the extent of the victim's injuries [and] to disprove [Defendant's] assertions that the stabbing was an accident." Defendant claims that the autopsy photographs have minimal, if any, probative value. They do not show Twigg's condition or wound as it was when Defendant would have seen it, but rather, the photos show Twigg's swollen face after he had expired and lengthy surgical incisions and sutures as a result of the emergency medical treatment. Defendant maintains that the photos served only to inflame the jury.
"Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact * * * as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number." State v. Maurer (1984),15 Ohio St.3d 239, paragraph seven of the syllabus.
 {¶ 35} An appellate court reviews a trial court's decision to admit photographs into evidence under an abuse of discretion standard. State v. Morales (1987), 32 Ohio St.3d 252, 258. "We will not disturb a trial court's balancing of the probative value against the prejudicial effect unless the trial court has "`clearly abused its discretion and the defendant has been materially prejudiced thereby.'" State v. Lamar,95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 55, quoting State v. Slagle (1992),65 Ohio St.3d 597, 602.
 {¶ 36} After reviewing the photos, we agree with Defendant that they are gruesome. However, the photos do have probative value in depicting the wound to the jury. We find that the probative value of the photos outweighs their prejudicial effect. As a result, we find that the trial court did not abuse its discretion by admitting the photos into evidence. Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"The juvenile court abused its discretion when it provided an additional written instruction to the jury during deliberations defining the phrase "proximate cause", where "proximate cause" was not an element of the charged involuntary manslaughter offense."
 {¶ 37} In his fourth assignment of error, Defendant states that the lower court abused its discretion in providing an additional written instruction to the jury defining the phrase proximate cause. The jury had asked for clarification of the word proximate, and not the phrase proximate cause, which was not an element of involuntary manslaughter, thus, Defendant argues, the trial court erred in providing the additional instruction.
 {¶ 38} When considering whether a trial court erred in giving a certain jury instruction, "a reviewing court must view the instructions as a whole. Absent an abuse of discretion in the overall composition of the instructions, this court will respect the sound judgment of the trial court." City of Akron v. Myers
(March 13, 2002), 9th Dist. No. 20743, at 6. An abuse of discretion is more than an error of judgment, but instead demonstrates `perversity of will, passion, prejudice, partiality, or moral delinquency.'" Buehler v. Falor, 9th Dist. No. 20673, 2002-Ohio-307, at 2, citing Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. There is no reversible error if the instructions are sufficiently clear to enable the jury to understand the law as applied to the facts. Buehler at 2, citing Atkinson v. Internatl. Technegroup, Inc. (1995),106 Ohio App.3d 349, 365.
 {¶ 39} During deliberations, the jury foreman passed a note to the bailiff stating the following: "Under involuntary manslaughter — elements of the offense, please clarify the second sentence, especially the word `proximate' as used[.]" In response to the question, and over the objections of defense counsel, the court provided an additional written instruction to the jury. The instruction stated:
"The Court will answer the first part of your question by defining the phrase `proximate cause.' Proximate cause is an act or failure to act which in the natural and continuous sequence directly produces the death, and without which it would not have occurred. Cause occurs when the death is the natural and foreseeable result of the act or failure to act."
 {¶ 40} We can see no harm to the Defendant in the trial court's given definition. Defendant has not shown how the trial court's response to the foreman's question asking for clarification was an abuse of discretion. As mentioned above, we will only find reversible error with regard to a jury instruction if the trial court acted in a manner that evidenced `perversity of will, passion, prejudice, partiality, or moral delinquency.'" See Buehler, supra. Defendant has not met his burden in showing an abuse of discretion with regard to the contested definition. Defendant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V
"The cumulative effect of errors at trial deprived [Defendant] of his constitutional right to a fair trial."
 {¶ 41} In his fifth assignment of error, Defendant argues that even if we found the previously raised assignments of error to be harmless, their cumulative effect deprived Defendant of a fair trial. We disagree.
 {¶ 42} As shown in our discussion of Defendant's five other assignments of error, this case does not present multiple errors. Any errors committed during Defendant's trial were harmless or nonprejudicial, therefore, we find that Defendant received a fair trial. See State v. Dixon, 101 Ohio St.3d 328, 2004 — Ohio-1585, at ¶ 101. Errors found to be harmless "cannot become prejudicial by sheer weight of numbers." Id., quoting State v.Hill (1996), 75 Ohio St.3d 195, 212. Accordingly, we overrule Defendant's fifth assignment of error.
 ASSIGNMENT OF ERROR VI
"The juvenile court erred in imposing a serious youthful offender dispositional sentence of more than the minimum prison term provided by law, where [Defendant] has not previously served a prison term and where the sentencing guidelines mitigated against such a prison sentence."
 {¶ 43} In his final assignment of error, Defendant argues that the lower court erred in imposing a serious youthful offender dispositional sentence of more than the minimum prison term since he has not previously served a prison term. We disagree.
 {¶ 44} Under R.C. 2152.13(D)(3), we consider the adult portion of Defendant's serious youthful offender disposition sentence as if it were not stayed for purposes of appeal. R.C.2953.08(G)(2) provides that we may modify Defendant's sentence if we clearly and convincingly find that either (a) "the record does not support the sentencing court's findings" or (b) "the sentence is otherwise contrary to law."
 {¶ 45} Defendant maintains that "[u]nder R.C. 2929.14(B), there is a sentencing presumption that a convicted defendant who has not previously served a prison term will receive the shortest prison term authorized by R.C. 2929.14(A)." We disagree. The Supreme Court of Ohio held that, "pursuant to R.C. 2929.14(B), when imposing a nonminimum sentence on a first [time] offender, a trial court is required to make its statutorily sanctioned findings on the record at the sentencing hearing." State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 26.
 {¶ 46} An appellate court reviews a sentence to determine whether the trial court complied with the statutory mandates of R.C. Chapter 2929. State v. Yeager, 9th Dist. Nos. 21092 and 21107, 2003-Ohio-1809, at ¶ 5. Therefore, we will not disturb a trial court's sentencing decision unless we find by clear and convincing evidence that the sentence is not supported by the record or is contrary to the law. State v. Harrold, 9th Dist. No. 21797, 2004-Ohio-4450, at ¶ 13. "Clear and convincing evidence is that evidence `which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" Id., quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 47} R.C. 2929.14(B) provides that: "if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
"(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
"(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B) does not require the court to give its reasons for finding that the seriousness of the offense will be demeaned or that the public not adequately protected if a minimum sentenced is imposed. State v. Edmonson
(1999), 86 Ohio St.3d 324, syllabus.
 {¶ 48} In this case, the juvenile court stated that it "did not impose the shortest prison term authorized for the offenses because the shortest prison term would demean the seriousness of the Juvenile's conduct and would not adequately protect the public from future crime by the Juvenile[.]" Based on the above, we find that the juvenile court complied with the statutory requirements of R.C. Chapter 2929. Defendant's sixth assignment of error is overruled.
 {¶ 49} We overrule Defendant's assignments of error and affirm the judgment of the Medina County Juvenile Court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, J. Concurs.