# Court of Appeals
## Tenth Appellate District of Texas

### 10-24-00200-CV

Francis Landry and Tamarra L. Landry,
Appellants

v.

John T. Unger,
Appellee

On appeal from the
335th District Court of Burleson County, Texas
Judge Carson T. Campbell Jr., presiding
Trial Court Cause No. 29053

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

Francis and Tamarra Landry appeal from the trial court's judgment in favor of John T. Unger in relation to the interpretation of easement rights. In eight issues, the Landrys argue that the trial court erred by awarding Unger declaratory relief, granting Unger injunctive relief, refusing to make additional findings of fact and conclusions of law, and awarding attorney's fees. We affirm.

## Background

This case involves an ongoing dispute between neighbors over two easements. The majority of the underlying facts are not disputed. Unger owns two tracts of real property in Burleson County. Tract 1 comprises approximately 96 acres and is contiguous to Tract 2 that comprises approximately 63 acres. The Landrys' 7-acre tract of real property is located entirely within Tract 2 of Unger's property. The Landrys hold two non-exclusive access easements across both tracts of Unger's property.

Easement 1 is embodied in two instruments. The first grants the "free and uninterrupted use, liberty, and privilege of and passage in and along" the described right-of-way: a 30-foot passage on Unger's Tract 1. The second instrument grants "the free and uninterrupted use, liberty, privilege and easement of passing in and along a certain roadway" across a described tract: a 30-foot passage directly adjacent to the 30-foot passage described in the first instrument. In total, Easement 1 consists of a 60-foot-wide passage across Unger's Tract 1. Easement 2 is embodied in two instruments that grant a 30-foot access easement across Unger's Tract 2.

After Unger purchased Tract 1 in 2001, he constructed a perimeter fence along and within Easement 1. He also relocated a drainage culvert and posted a no trespassing sign within the easement. The Landrys brought suit to enjoin

Unger's interference with the easement. *See Unger v. Landry*, No. 01-03-01331-CV, 2005 WL 21396 at *1 (Tex. App.—Houston [1st Dist.] Jan. 6, 2005, pet. denied) (mem. op.). In that case, Unger maintained that Easement 1 limited the Landrys' use of the easement to the roadway as it existed when the easement was granted rather than the full width of the easement. *Id*. at *3. The trial court found that the Landrys have free and uninterrupted use of the entire easement and ordered Unger to remove the fence, the culvert, and the no trespassing sign. *Id*. at *1. The trial court further permanently enjoined Unger from making any improvements within the easement. *Id*.

When Unger appealed the prior lawsuit, he argued that the trial court failed to properly limit the Landrys' use of the easement to the roadway and failed to properly allow his use of the easement. *Id*. at *2. The court concluded that the express terms of the easement gave the Landrys the right to use the entire width of the 30-foot easement. *Id*. at *3. The court further determined that the fence, buried culvert pipe, and rerouted drainage ditch are permanent in nature and encroach on the easement such that a suit for injunction would lie. *Id*. at *4.

Beginning in 2015, the Landrys and other neighbors engaged in conduct that Unger considered to interfere with his use of the easements. In 2017,

Unger brought suit against the Landrys[1] based upon that conduct. Unger sought declaratory and injunctive relief to prevent the Landrys from interfering with his rights to use the easements.

After a bench trial, the trial court found in favor of Unger and signed a final judgment on April 1, 2024, that ordered, adjudged, and declared that:

1. Francis Landry and Tamarra L. Landry are holders of the Dominant Estate with regard to Easement No. 1 and Easement No. 2;

2. Adolph Kazmir, Ruth Kazmir and Wayne Kazmir are holders of the Dominant Estate with regard to Easement No. 1;

3. John T. Unger is the holder of the servient estate with regard to Easements No. 1 and Easement No. 2;

4. Easement No. 1 and Easement No. 2 do not entitle the Dominant Estate holders, including Francis Landry, Tamarra L. Landry, Adolph Kazmir, Ruth Kazmir and Wayne Kazmir to place any signs ("No Trespassing" or otherwise) within their boundary;

5. Easement No. 1 and Easement No. 2 do not entitle the Dominant Estate holders, including Francis Landry, Tamarra L. Landry, Adolph Kazmir, Ruth Kazmir and Wayne Kazmir to place a fence within their boundary;

6. Easement No. 1 and Easement No. 2 do not entitle the Dominant Estate holders, including Francis Landry, Tamarra L. Landry, Adolph Kazmir, Ruth Kazmir and Wayne Kazmir to exclude any person, including without limitation, guests and invitees of [Unger] or other easement holders from entering into Easement No. 1 or Easement No. 2 or passing along on the roadway

---

[1] Unger filed an amended petition that included Adolph and Ruth Kazmir, Wayne Kazmir, and David and Krista Lish as defendants. Each of those parties have an interest in the easements. Prior to trial, David and Krista Lish signed an Agreed Final Judgment. They are not a party to this appeal. None of the Kazmir defendants are a party to this appeal.

constructed within Easement No. 1 or Easement No. 2 that is known as Private Road 2010;

7. Easement No. 1 and Easement No. 2 do not entitle the Dominant Estate holders, including Francis Landry, Tamarra L. Landry, Adolph Kazmir, Ruth Kazmir and Wayne Kazmir the right to cut, trim, or remove any tree or shrub within the easement boundary unless such tree or shrub is determined to reasonably interfere with the passage along Private Road 2010 or the use and enjoyment or maintenance of Private Road 2010 and so long as the cutting, trimming, or removal of such tree or shrub does not unreasonably interfere with [Unger's] use and enjoyment of the servient estate property serving Easements No. 1 and No. 2.

The trial court's judgment further ordered injunctive relief prohibiting the Landrys from:

1. Placing of signs ("No Trespassing" or otherwise) within Easements No. 1 or Easement No. 2;

2. Placing a fence within Easements No. 1 or Easement No. 2;

3. Excluding any person, including without limitation, guests or invitees of [Unger] or any other easement holder from entering or using Easement No. 1 or Easement No. 2 and from passing along the roadway constructed within Easement No. 1 and Easement No. 2 that is known as Private Road 2010; and

4. Placing road bumps on Private Road 2010 in Burleson County, Texas.

The trial court awarded Unger attorney's fees against the Landrys in the amount of $68,701.00 with additional conditional attorney's fees in the event of an appeal. The Landrys appeal from the trial court's judgment.

# Issue One

In their first issue, the Landrys argue that the trial court erred by awarding the declaratory relief contained in the final judgment because it conflicts with their easement rights. Within their first issue, the Landrys bring the following sub-issues:

Sub-Issue 1(a): The trial court's Finding of Fact No. 7 which implicitly limits the easement rights to an existing road rather than the entirety of the easement's metes and bounds was previously explicitly rejected by a court of appeals in interpreting an easement at issue in this case.

Sub-Issue 1(b): There was no evidence, or, in the alternative, insufficient evidence, to support the trial court's Finding of Fact No. 7 because "Access Easement No. One" and "Access Easement No. Two" are not also known as Burleson County Private Road 2010.

Sub-Issue 1(c): The trial court incorrectly interpreted the Landrys' easement rights in Conclusion of Law #5 by concluding that they may not place any signs in the easements.

Sub-Issue 1(d): The trial court incorrectly interpreted the Landrys' easement rights in Conclusion of Law #6 by concluding that they may not place any fencing on the easements.

Sub-Issue 1(e): The trial court incorrectly interpreted the Landrys' easement rights in Conclusion of Law #7 by concluding that they may not exclude any person from the easement areas.

Sub-Issue 1(f): The trial court incorrectly interpreted the Landrys' easement rights in Conclusion of Law #8 by concluding that they do not have the right to cut, trim, or remove any tree or shrub within the easement boundary unless such trees or shrubs are [sic] unreasonably interfere with the passage along Private Road 2010 or the use and enjoyment or maintenance of Private Road 2010 and

so long as the cutting, trimming, or removal of such tree or shrub does not unreasonably interfere with or deprive Plaintiff's use and enjoyment of the servient estate property serving Access Easements No. One and Access Easement No. Two.

Sub-Issue 1(g): A. There was no evidence, or in the alternative, insufficient evidence, to support the trial court's Findings of Fact No. 9. Additionally, Findings of Fact Nos. 9 incorporates incorrect conclusions of law, as the "reasonably necessary" and "unreasonably interfere" standards are not the proper standards and the scope of Access Easement No. One is incorrectly narrowed to the road.

**Standard of Review**

After a bench trial, we review a trial court's conclusions of law *de novo* and its findings of fact for sufficiency of the evidence. *Hegar v. American Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020). "We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports." *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). "Under *de novo* review, the reviewing court exercises its own judgment and redetermines each legal issue." *Wells Fargo Bank, N.A. v. Citizens Bank of Tex., N.A.*, 181 S.W.3d 790, 796 (Tex. App.—Waco 2005, pet. denied). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Westech Eng'g, Inc. v. Clearwater Constructors*, Inc., 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ). "Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law." *Id.*

A trial court's findings of fact after a bench trial have the same weight and are judged by the same standards as a jury verdict. *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). "The trial court's findings of fact are reviewable for legal (and factual) sufficiency of the evidence by the same standards as applied in reviewing the legal (and factual) sufficiency of the evidence supporting a jury's finding." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When reviewing legal sufficiency, we consider all the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). When reviewing a factual sufficiency challenge, we consider all the evidence in the record and may set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

When the appellate record contains a reporter's record, findings of fact are not conclusive and are binding only if supported by the evidence. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). If there is a conflict in the evidence, the trier of fact is the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given to their testimony. *Eggemeyer v. Hughes*, 621 S.W.3d 883, 890 (Tex. App.—El Paso 2021, no pet.).

**Applicable Law**

An easement is a non-possessory interest that allows its holder to use another's property for a stated purpose. *See State v. Brownlow*, 319 S.W.3d 649, 652 (Tex. 2010); *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). "An easement does not convey title to property." *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 658 (Tex. 2007). An easement that grants a right of ingress and egress, like the one at issue in this appeal, allows the holder to traverse another's land to access his own property. *Clearpoint Crossing Prop. Owners Ass'n & Cullen's LLC v. Chambers*, 569 S.W.3d 195, 200 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974)).

"When construing the terms of an easement, courts deploy the rules of contract interpretation and look to the easement's express terms to determine its scope." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 686 (Tex. 2020); *see also Marcus Cable Assocs.*, 90 S.W.3d at 700–01. We examine and consider the entire writing "and harmonize its terms to give effect to all of the provisions." *Sw. Elec. Power Co.*, 595 S.W.3d at 686. "If the easement's terms are ascertainable and can be given legal effect, courts will not supplant the easement's express terms with additional terms nor consult extrinsic evidence to discern the easement's meaning." *Id.* at 689. When no one asserts that an

express easement is ambiguous, as in this case, we review the trial court's interpretation as a matter of law. *See DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999); *CenterPoint Energy Houston Elec. LLC v. Blubonnet Drive, Ltd.*, 264 S.W.3d 381, 388 (Tex. App.— Houston [1st Dist.] 2008, pet. denied). The mere fact that the parties disagree about the meaning of an express easement does not render the easement ambiguous. *DeWitt Cty.*, 1 S.W.3d at 100.

The law balances the rights of the parties to an easement by prohibiting the servient estate holder from interfering with the dominant estate holder's "use of an easement for the purpose for which it was granted or sought." *Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 443 (Tex. App.—Fort Worth 2020, no pet.). "If a particular purpose is not provided for in the grant, the holder of the easement may not use the property for that purpose." *Id.* at 445.

Just as the servient estate cannot interfere with the right of the dominant estate to use an easement, the easement owner must make reasonable use of the right and not unreasonably interfere with the property rights of the owner of the servient estate. *San Jacinto Sand Co. v. Sw. Bell Tel. Co.*, 426 S.W.2d 338, 345 (Tex. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *see also Robles v. Mann*, No. 13-14-00211-CV, 2016 WL 1613316, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 21, 2016, no pet.) ("[T]he easement

owner must make reasonable use of the right and not unreasonably interfere with property rights of the owner of the servient estate."). "[T]he threshold inquiry is not whether the proposed use results in a material burden, but whether the grant's terms authorize the proposed use." *Marcus Cable Assoc.*, 90 S.W.3d at 703.

**Relevant Language From Deeds**

In two instruments, Easement 1 grants the "free and uninterrupted use, liberty, and privilege of and passage in and along" the described right-of-way: a 30-foot passage on Unger's Tract 1 and "the free and uninterrupted use, liberty, privilege and easement of passing in and along a certain roadway" across a described tract: a 30-foot passage directly adjacent to the 30-foot passage described in the first instrument. In total, Easement 1 consists of a 60-foot-wide passage across Unger's Tract 1.

Easement 2 grants "the free and uninterrupted use, liberty, and privilege of passage" along the following described right-of-way: a 30-foot access easement across Unger's Tract 2.

**Relevant Findings of Fact and Conclusions of Law**

**Findings of Fact**

7. Access Easement No. One and Access Easement No. Two are also known as Burleson County Private Road 2010.

9. One or more of the Defendants trimmed, cut and removed trees and shrubbery on Tract No. One beyond that which was reasonably necessary for the use and enjoyment of Access Easement No. One and which did not unreasonably interfere with the use and passage along Access Easement No. One.

**Conclusions of Law**

5. The Court finds that Access Easement No. One and Access Easement No. Two do not entitle the Dominant Estate holders, including Francis Landry, Tamarra L. Landry, Adolph Kazmir, Ruth Kazmir and Wayne Kazmir, to place any signs ("No Trespassing" or otherwise) within their boundary.

6. The Court finds that Access Easement No. One and Access Easement No. Two do not entitle the Dominant Estate holders, including Francis Landry, Tamarra L Landry, Adolph Kazmir, Ruth Kazmir and Wayne Kazmir, to place a fence within their boundary.

7. The Court finds that Access Easement No. One and Access Easement No. Two do not entitle the Dominant Estate holders, including Francis Landry, Tamarra L. Landry, Adolph Kazmir, Ruth Kazmir and Wayne Kazmir, to exclude any person, including without limitation, guests and invitees of Plaintiff or other easement holders from entering into Access Easement No. One or Access Easement No. Two or passing along on the roadway constructed within Access Easement No. One or Access Easement No. Two that is known as Private Road 2010.

8. The Court finds that Access Easement No. One and Access Easement No. Two do not entitle the Dominant Estate holders, including Francis Landry, Tamarra L. Landry, Adolph Kazmir, Ruth Kazmir, and Wayne Kazmir, the right to cut, trim, or remove any tree or shrub within the easement boundary unless such trees or shrubs are unreasonably interfere [sic] with the passage along Private Road 2010 or the use and enjoyment or maintenance of Private Road 2010 and [sic] so long as the cutting, trimming, or removal of such tree or shrub does not unreasonably interfere with or deprive Plaintiffs use and enjoyment of the servient estate

property serving Access Easements No. One and Access Easement No. Two.

**Discussion**

The Landrys' arguments are based upon their interpretation of the prior decision of the Houston Court of Appeals. *See Unger,* 2005 WL 21396 at *2. In that case, the court rejected Unger's contention that the Landrys' easement rights were limited to the existing roadway and concluded that the Landrys had the right to use the entire width of the metes and bounds description in the easement. *Id.* at *3. The Landrys maintain that in the present case, the trial court failed to properly follow the appellate court's precedent. We disagree.

"If a particular purpose is not provided for in the grant, the holder of the easement may not use the property for that purpose." *Atmos Energy* Corp., 598 S.W.3d at 445. The Landrys do not dispute that Easements 1 and 2 are non-exclusive access easements. Francis Landry testified that the purpose of the easements is to allow him to access his property. The language in the non-exclusive access easements does not authorize the Landrys to place signs on the easements, erect fencing on the easements, exclude Unger's guests and invitees from using the easements, or cut trees and shrubs on the easement. *See Marcus Cable Assoc.*, 90 S.W.3d at 703.

Our conclusion, as well as that of the trial court, is not in conflict with the Houston Court of Appeals' determination that the Landrys have the right to use the entire width of the metes and bounds description in the easement. *Unger,* 2005 WL 21396 at *2. The prior court of appeals' decision allows the Landrys to use the full easement, but only for the purpose provided in the easements. None of the uses prohibited by the trial court's judgment are specifically authorized in the easements. The purpose stated in the easements is for access. We disagree with the Landrys' argument that the trial court effectively determined, contrary to the prior holding by the Houston Court of Appeals, that the Landrys' rights are limited to the roadway. Nothing in the trial court's judgment prevents the Landrys from using the entire easement for access to their property. There was no evidence that the prohibited uses were for the purpose of access to the Landrys' property.

Although the easements do not authorize the Landrys to place signs on the easements, erect fencing on the easements, exclude Unger's guests and invitees from using the easements, or cut trees and shrubs on the easement, Unger cannot interfere with the Landrys' use of the easement for the purpose for which it was granted—access to their property. *See Atmos Energy Corp.*, 598 S.W.3d at 443.

The trial court found that the easements do not entitle the Landrys to place any signs, including no trespassing signs, within the boundaries of the easements. There was no evidence at trial that placing signs within the easements was necessary for the Landrys to access their property. The signs were intended to keep people from accessing the easements. Because they are non-exclusive access easements, allowing others to access the easements does not interfere with the Landrys' use of the easements for its stated purpose of access. The Landrys argue on appeal that because lights, signs, and safety features are part of a roadway's design, the trial court limited their enjoyment of their easement rights. However, there was no evidence at trial that signs were necessary for them to access their property. Nothing in the trial court's judgment prevents the Landrys from placing signs on their own property outside the boundaries of the easements.

The trial court found that the easements do not entitle the Landrys to place a fence within the boundaries of the easements. The Landrys presented no evidence that a fence was necessary for them to access their property. Rather the fence was to prevent others from accessing the non-exclusive access easements. As previously stated, the easements are non-exclusive, and the Landrys' access to their property is not prohibited by others using the easements.

The trial court found that the easements do not entitle the Landrys to exclude any person, including Unger's guests and invitees, from entering the easements and passing along Private Road 2010. Francis Landry testified at trial that the easements do not authorize him to exclude others from the easements. The Landrys argue on appeal that they have the right to exclude individuals actively harming the easement. However, there was no evidence at trial as to others actively harming the easements and preventing the Landrys from accessing their property.

The trial court found that the easements do not entitle the Landrys to cut, trim, or remove any tree or shrub within the easement boundary unless such tree or shrub is determined to unreasonably interfere with the passage along Private Road 2010 or the use and enjoyment or maintenance of Private Road 2010 so long as the cutting, trimming, or removal of such tree or shrub does not unreasonably interfere with Unger's use and enjoyment of the servient estate property serving Easements 1 and 2. Unger concedes that some cutting and trimming is necessary to maintain the Landrys' right of access, but he disputes the extent of the right to cut and trim.

Unger testified that the Landrys engaged in "clear-cutting" across the easements removing trees and shrubs that were not interfering with the passage along the easement. Unger offered extensive testimony describing the

cutting as well as photographs depicting the cutting. Francis Landry testified at trial and agreed that he only has the right to cut trees that interfere with his use of the easement and right of passage. Larry Blum testified that he builds roads and that he performed work on Private Road 2010. He stated that trees and shrubs ten to fifteen feet away from the road were not interfering with the road and would not interfere with maintenance of the road. Adolph Kazmir, another easement holder, testified that it was not necessary to clear-cut the entire width of the easement to access the easement. There was evidence that the Landrys' cutting and trimming of trees and shrubs went beyond that reasonably necessary for their use and enjoyment of the easements and unreasonably interfered with the servient estate. *See Lamar County Elec. Co-op. Ass'n v. Bryant*, 770 S.W.2d 921, 923 (Tex. App.—Texarkana 1989, no writ), overruled in part on other grounds, *Gilbert Wheeler, Inc. v. Enbridge Pipelines (East Texas), L.P.*, 449 S.W.3d 474 (Tex. 2014). The evidence supports the trial court's finding of fact and declaration that the Landrys are not entitled to cut or trim trees or shrubs except those that reasonably interfere with the passage along Private Road 2010 so long as the cutting or trimming does not interfere with Unger's use and enjoyment of the servient estate. *See id.*

The Landrys also complain that the trial court's Finding of Fact 7 is not supported by the evidence. Finding of Fact 7 states that Easements 1 and 2 are also known as Private Road 2010. The record shows that Private Road 2010 is located within Easement 1. The evidence does not support the trial court's Finding of Fact 7. However, an erroneous finding of fact on an immaterial finding is harmless and not grounds for reversal. *Wood v. Wiggins*, 650 S.W.3d 533, 562 (Tex. App.—Houston [1st Dist.] 2021, pet. denied). The name of the road is immaterial to the trial court's judgment. The trial court's judgment clearly establishes the easements it construed and clearly establishes the rights of the parties within the boundaries of the easements. Therefore, the finding was not on an ultimate issue and was immaterial to the trial court's judgment. Reading the trial court's findings of fact and conclusions of law in their entirety, it is apparent that the trial court did not base its judgment on the name of the road located within the easements. We conclude that the disputed finding is not a basis for reversal of the trial court's judgment. *Id.* at 732.

The evidence is sufficient to support the trial court's Finding of Fact 9 and Conclusions of Law 5, 6, 7, and 9. The disputed Finding of Fact 7 is not material to the trial court's judgment. We conclude that the trial court did not

err in awarding the declaratory relief contained in the final judgment. Having considered all of the Landrys' complaints, we overrule the first issue.

## Issue Two

In the second issue, the Landrys argue that the trial court erred by granting the permanent injunctions contained in the Final Judgment. Within their second issue, the Landrys bring the following sub-issues:

> Sub-Issue 2(a): The Final Judgment does not set forth the reasons for the issuance of the permanent injunctions granted by the trial court in violation of Texas Rule of Civil Procedure 683.

> Sub-Issue 2(b): To the extent the injunctive relief was based upon the incorrect declarations, findings of fact, and conclusions of law described in Issue Number One, the trial court erred as there is an inadequate basis for such injunctive relief and such injunctive relief is overly broad.

> Sub-Issue 2(c): There was no evidence, or in the alternative, insufficient evidence to support the trial court's Finding of Fact No. 12. Additionally, Finding of Fact No. 12 incorporates an incorrect conclusion that the "road bump" was "improperly" installed.

> Sub-Issue 2(d): There was no irreparable injury that justified the imposition of the permanent injunctions contained in the Final Judgment.

### Standard of Review

The decision to grant or deny a permanent injunction is within the sound discretion of the trial court and will be reversed only when a clear abuse of that discretion is shown. *Huynh v. Blanchard*, 694 S.W.3d 648, 673 (Tex. 2024). A trial court abuses its discretion by acting arbitrarily and unreasonably or

misapplying the law to the established facts of the case. *Id* at 674. There is no abuse of discretion if the trial court heard conflicting evidence and evidence appears in the record that reasonably supports the trial court's decision. *Glattly v. Air Starter*, 332 S.W.3d 620, 642 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). We may not substitute our judgment for that of the trial court. *Id.*

**Applicable Law**

To be entitled to a permanent injunction, a party must prove (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law. *Huynh*, 694 S.W.3d at 674. To establish a probable, imminent, and irreparable injury, proof of an actual threatened injury, as opposed to a speculative or conjectural one, is required. *Texas Dep't of Public Safety v. Salazar*, 304 S.W.3d 896, 908 (Tex. App.—Austin 2009, no pet.). The question of whether a probable, imminent, and irreparable injury exists to warrant injunctive relief is a legal question for the court. *Gilbreath v. Horan*, 682 S.W.3d 454, 543 (Tex. App.—Houston [1st Dist.] 2023, pet. denied).

Every order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not

by reference to the complaint or other document, the act or acts sought to be restrained. TEX. R. CIV. P. 683.

**Discussion**

The trial court's final judgment ordered the Landrys to desist and refrain from (1) placing signs within the easements, (2) placing a fence within the easements, (3) excluding any person, including Unger's guest and invitees from using the easements, and (4) placing road bumps on Private Road 2010.

The Landrys argue that the permanent injunctions are overly broad because they prevent them from conducting lawful activities or exercising their legal rights. The Landrys argument is premised upon their contention that the trial court erred by granting the Unger's declaratory relief. Having concluded that the trial court did not err by declaring that the easements do not entitle the Landrys to place signs on the easements, place fences on the easements, and exclude other persons from accessing the easements, we reject the Landrys' argument that the injunctive relief is overly broad based upon their contention that they have the right to engage in those activities.

The Landrys contend that there is no evidence or insufficient evidence to support the trial court's Finding of Fact 12 which states, "[o]ne or more of the defendants improperly installed road bumps" on Easement 2. The trial court heard conflicting evidence on the road bumps placed on the roadway of the

easement. Unger referred to them as road bumps while the Landrys characterized them as diversion berms. The trial court viewed images of the disputed road bumps that went across the entire roadway.

Blum testified that diversion berms are usually placed off to the side of the road on the shoulders to divert water away from the road. Blum explained that a diversion berm is not like a speed bump, and a person can easily drive over a diversion berm without realizing it. Blum testified that the best way to divert water from the road would be by placing a "crown on the road" that is higher in the middle so that the water runs off.

If there is a conflict in the evidence, the trier of fact is the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given to their testimony. *Eggemeyer*, 621 S.W.3d at 890. The trial court viewed photographs of the disputed road bumps, heard testimony concerning diversion berms, and found that the road bumps were improperly installed. After reviewing the entire record, we conclude that the evidence is legally and factually sufficient to support the trial court's Finding of Fact 12. Nothing in the trial court's judgment prevents the Landrys from properly diverting water from Private Road 2010.

The Landrys also argue that the trial court's judgment does not set forth the reasons for the issuance of the permanent injunction as required by Rule

683 of the Texas Rules of Civil Procedure. Rule 683 requires that an order granting injunction shall (1) set forth the reasons for its issuance, (2) be in specific terms, and (3) describe in reasonable detail the act or acts sought to be restrained. TEX. R. CIV. P. 683. The Landrys only complain that the injunction does not comply with Rule 683 because it does not set forth the reasons for its issuance. Here, the injunctive relief was granted in a final judgment. The trial court's final judgment declared that the Landrys were not entitled to place signs on the easements, place a fence on the easements, or exclude Unger's guests and invitees from using the easements. Therefore, the reasons for the injunctive relief were contained within the final judgment. The injunction granted in the final judgment is definite, clear, and precise, and the judgment complies with the rules relating to judgments. *See* TEX. R. CIV. P. 301; *Qaddura v. Indo-Eur. Foods, Inc.,* 141 S.W.3d 882, 892 (Tex. App.—Dallas 2004, pet. denied).

The Landrys contend that Unger did not show an irreparable injury that justified the imposition of the permanent injunctions. An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002). The record shows that the Landrys' proposed uses did not serve the stated purpose of the non-exclusive

access easements. If a use does not serve the easement's express purpose, it becomes an unauthorized presence on the land whether or not it results in any noticeable burden to the servient estate. *Marcus Cable Assocs.*, 90 S.W.3d at 703. Where a trespass invades the possession of a person's land, or destroys the use and enjoyment of that land, an injunction is a proper remedy. *Beathard Joint Venture v. W. Houston Airport Corp.*, 72 S.W.3d 426, 432 (Tex. App.—Texarkana 2002, no pet.). In such situations, the requirements of no adequate remedy at law and irreparable damage are satisfied. *See id.*

The record does not support the Landrys' argument that the trial court abused its discretion in granting injunctive relief. We overrule the second issue.

## Issues Three through Eight

In issues three through eight, the Landrys challenge the trial court's award of attorney's fees to Unger. The Landrys present the following issues for review:

> Issue Three: The trial court erred by refusing to make requested additional findings of fact and conclusions of law.

> Issue Four: The trial court erred by failing to properly apply Texas Rule of Civil Procedure §37.009 by awarding attorney's fees under that statute without making a determination that such fees are equitable and just.

Issue Five: The trial court erred by failing to properly segregate Unger's claims for which attorney's fees are available from those claims that are not available.

Issue Six: Trial court abused its discretion if the trial court did not follow the lodestar method.

Issue Seven: The trial court erred by awarding Unger attorney's fees in the amount of $68,701.00.

Sub-Issue 7(a): There was no evidence, or, in the alternative, insufficient evidence, to support the trial court's Finding of Fact No. 15

Sub-Issue 7(b): The trial court erred in making its Conclusion of Law 13 as there was no evidence, or in the alternative, insufficient evidence to support the trial court's Conclusion of Law Nos. 13, and Conclusion of Law No. 13 did not correctly apply the standards for an award of such attorney's fees.

Issue Eight: Reversal of the declaratory or injunctive relief pursuant to this appeal necessitates a remand on the issue of attorney's fees.

## Standard of Review

A trial court's award of attorney's fees will not be disturbed absent an abuse of discretion. *Brazos Valley Roadrunners, LLC v. Herrera*, 708 S.W.3d 289, 293 (Tex. App.—Waco 2025, no pet.). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241– 42 (Tex. 1985). A trial court does not abuse its discretion if some evidence

reasonably supports the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

"When reviewing a trial court's award of attorneys' fees, we must ensure the record contains sufficient evidence to support such an award." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020). If there is insufficient evidence in the record to uphold the trial court's award of those fees, we must reverse. *Id.*

**Applicable Law**

To secure an award of attorney's fees from an opponent, the prevailing party must prove (1) the recovery of attorney's fees is legally authorized by statute or contract, and (2) the fees were reasonable and necessary for the legal representation. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019). "[O]nly fees reasonable and necessary for the legal representation will be shifted to the non-prevailing party, and not necessarily the amount contracted for between the prevailing party and its attorney, as a client's agreement to a certain fee arrangement ... does not necessarily establish that fee as reasonable and necessary." *Id.* at 487–88 (citing *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). An amount incurred or contracted for is not conclusive evidence

of reasonableness or necessity. *See id.* at 488. "The fee claimant still has the burden to establish reasonableness and necessity." *Id.*

The Texas Supreme Court has stated that a factfinder should consider the following factors when determining what attorney's fees are reasonable and necessary:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co.*, 945 S.W.2d at 818 (citing Tex. Disciplinary R. Prof. Conduct 1.04, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. (State Bar Rules, art. X, § 9); *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880,

881 (Tex. 1990)). These factors have generally become known as the "*Arthur Andersen* factors."

The Texas Supreme Court also recognizes an alternative method for determining the reasonableness and necessity of attorney's fees—the lodestar method. In *Rohrmoos*, the Texas Supreme Court clarified that "we intend[ ] the lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." 578 S.W.3d at 497–98. Therefore, under the lodestar method, "the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Id.* at 498 (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)). Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when those services were performed, (4) the reasonable amount of time required to perform those services, and (5) the reasonable hourly rate for each person performing such services. *Id.* (citing *El Apple I, Ltd.*, 370 S.W.3d at 762–63). When awarding an attorney's fee under this method, the factfinder must first determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. *Id.* Next, to get the lodestar, the number of hours

is multiplied by the applicable rate to produce the base lodestar figure. *Id.* The base lodestar may be adjusted up or down by the factfinder if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.* The *Arthur Andersen* factors may justify an adjustment, but considerations already incorporated into the base calculation may not be applied to rebut the presumption that the base calculation reflects reasonable and necessary attorney's fees. *Id.* (citing *Arthur Andersen & Co.*, 945 S.W.2d at 818).

**Discussion**

Counsel for Unger and the Landrys agreed to submit their respective evidence on attorney's fees by affidavit. Unger's counsel introduced an exhibit asking for $137,402 in attorney's fees. He explained that the fees were reasonable and necessary and that he had segregated out an amount because it pertained to claims for which attorney's fees are not recoverable. The Landrys did not object to the affidavit on attorney's fees Unger's counsel submitted. The trial court awarded Unger $68,701 in attorney's fees, one half of that requested.

The Landrys contend that the trial court failed to properly segregate Unger's claims for which attorney's fees are available, from those claims in which they are not available. In the context of segregation of fees, if the issue

is not raised "at the time in which the evidence of attorney's fees was presented and considered by the trial court, its objection is untimely and, thus, any error is waived." *Tex Star Motors, Inc. v. Regal Fin. Co.*, 401 S.W.3d 190, 203 (Tex. App.—Houston [14th Dist.] 2012, no pet.). By failing to raise an objection when the trial court admitted Unger's evidence on attorney's fees specifically addressing segregation when the parties or the trial court could have acted to correct any error, the Landrys waived their complaint about the segregation of attorney's fees. We overrule their fifth issue.

The Landrys argue that the trial court erred by refusing to make requested additional findings of fact and conclusions of law related to the award of attorney's fees. The trial court found that Unger presented evidence of segregated attorney's fees that were reasonable and necessary in the amount of $137,402. The trial court made further findings on attorney's fees in the event of an appeal. The trial court's conclusions of law reflect an award of $68,701 as reasonable and necessary attorney's fees to Unger.

The Landrys complain that the trial court did not make any findings of fact that (1) the attorney's fees were equitable and just, (2) the claims for which Unger was awarded attorney's fees, (3) the basis of a lodestar calculation, whether a lodestar calculation was used, and if so, were any adjustments made and the amount of the adjustments, and (4) an explanation on the discrepancy

between the finding of $137,402 in reasonable and necessary attorney's fees and the award of $68,701 as reasonable and necessary attorney's fees. They maintain that they were harmed by the trial court's failure to make the additional findings of fact because it prevented them from adequately presenting their complaints on appeal.

The trial court has no duty to make additional or amended findings that are unnecessary or contrary to its judgment; a trial court is only required to make additional findings and conclusions that are appropriate. *Zhang v. Cap. Plastic & Bags, Inc.*, 587 S.W.3d 82, 88 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). At trial, the parties agreed to present evidence of attorney's fees by affidavit. The Landrys made no objections to Unger's evidence on attorney's fees at the time it was admitted. In addition, at the conclusion of the trial the trial court stated on the record its award of $68,701 in attorney's fees noting that it was half of that requested by Unger, and the Landrys offered no objection at that time.

The Landrys now seek findings explaining every detail in how the trial court reached its decision on attorney's fees. The trial court is not required to set out in detail every reason or theory by which it arrived at its conclusions. *Id.* at 90. The Landrys have not demonstrated that the trial court's refusal to make additional findings of fact prevented them from being able to adequately

present their complaints on appeal. *See id.* at 88–9. Unger's counsel presented detailed evidence on his attorney's fees without objection, and the trial court found that the fees were reasonable and necessary. We conclude that the trial court did not err in refusing to make the requested additional findings of fact and conclusions of law. We overrule the third issue.

The Landrys next argue that the trial court erred by failing to properly apply Section 37.009 of the Texas Civil Practices and Remedies Code in its award of attorney's fees. The Declaratory Judgments Act allows a court to award reasonable and necessary attorney's fees as long as the award is equitable and just. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The Landrys maintain that the trial court did not make any finding of fact or conclusion of law that the award was equitable and just.

We review whether the trial court's award is "equitable and just" for an abuse of discretion. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex. 1998). It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles. *See Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex. 1997). Unger's attorney presented evidence of his attorney's fees without objection. The evidence included invoices specifically stating the date of service, who provided the service, the hours spent on each item, and the amount billed for that service. Based on the record before us, we cannot

conclude that the trial court abused its discretion in its award of $68,701 in attorney's fees to Unger. We overrule the fourth issue.

The Landrys argue that there was no evidence or insufficient evidence to support the trial court's finding of fact and conclusion of law regarding attorney's fees. The Landrys also complain that the trial court abused its discretion if it did not follow the lodestar method in awarding attorney's fees.

The Landrys did not challenge the affidavit of Unger's counsel in support of attorney's fees. An attorney's affidavit is sufficient proof of attorney's fees when the affidavit is unchallenged. *In re Friesenhahn*, 185 S.W.3d 16, 21 (Tex. App.—San Antonio 2005, pet. denied). Unger presented evidence of (1) particular services performed, (2) who performed those services, (3) approximately when those services were performed, (4) the reasonable amount of time required to perform those services, and (5) the reasonable hourly rate for each person performing such services. Therefore, we cannot conclude that the trial court abused its discretion by failing to follow the lodestar method. *See Rohrmoos*, 578 S.W.3d at 498. We overrule the sixth and seventh issues. Because of our disposition of the first and second issues, we need not address the Landrys' eighth issue that reversal of the trial court's declaratory and injunctive relief necessitates a remand on the issue of attorney's fees. *See* TEX. R. APP. P. 47.1.

## Conclusion

Having considered and overruled the Landrys' issues on appeal, we affirm the trial court's judgment.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  June 11, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
CV06

